## John R. Baker v. James B. Johnston.

*Dedication of public squares: Acceptance: Revocation: Act No. 86 of 1850.* At common law there could be no setting apart of lands, by dedication, for any other public uses than for highways. Commons, pleasure grounds and other analogous rights are always assumed to rest in grant. But in the United States the general doctrine is, that where the purpose is clear and well defined, the courts will protect lands which have been dedicated to public uses.

BAKER v. JOHNSTON.

Under the statutes in force regulating the laying out of plats prior to the law of 1850, the plat, executed and acknowledged in accordance with the law, operated as a conveyance in trust to the county for the purposes designated on it. But, as a designation as a "public square" would not necessarily mean anything more than that it was designed for a public use, without specifying the use; the plat alone would not define the trust purpose. The statute of 1850 legalized such dedications as were defective only in not fully defining the purpose for which the square was intended, but it only applied to such plats as had been duly executed and acknowledged. Public squares on plats not thus executed and acknowledged were not affected by the act of 1850.

While it may be assumed as the law at this day that there may be a dedication against the land-owner, without a statutory and formal conveyance to the county; yet, where a land-owner sets apart a portion of his plat for public uses, he has a right to expect that within a reasonable time it will be put in condition to subserve those uses. And the public can bind the land-owner only by acting on his dedication, before he has an equitable right to withdraw it.

What acts of acceptance, on the part of the public, are necessary to make the dedication irrevocable, can only be determined by considering the elements which must be taken into account; and these are so various that lands intended for different public purposes cannot all be treated alike.

Dedications to public uses on plats within cities and incorporated villages can be accepted only by the municipal authorities. A dedication for a highway —but for no other public purpose—may, by statute, become irrevocable, by user only.

The designation of the particular use to which land shall be devoted, which has been dedicated as a public square, in the manner prescribed by the statute, rests with the public authorities. And where there are no such authorities, and the designation is not statutory, the land-owner may determine its purposes, until, by some action estopping him from further interference, he has bound himself to acquiesce. But to constitute such an estoppel there must be distinct and encouraged action, in reliance upon the promise of the land-owner by the public authorities, if there be such, or by those whom he recognizes as acting for the general interest, if there be not.

If the owner covenant with others, who assume to act for the general interest, that upon conditions performed the land shall be irrevocably devoted to any public use,—unless the conditions require some permanent organization to perform them,—and if the covenantees have any individual interest to connect them with the locality, an equity would arise to enforce the obligation. If, in an unincorporated village, there be concerted action by those interested in the subject, in which the land-owner participates, to prepare the ground for a public square or park, by voluntary contributions of money or labor actually employed for the purpose, and with the design of carrying out the purpose of the dedication, such action would constitute an acceptance of the dedication, which the land-owner would not be permitted to revoke.

Sales of lots, bounded upon streets surrounding a space marked on the plat as a public square, have no tendency to prove an acceptance by the public of the square as devoted to public uses, or an estoppel in favor of the public. Purchasers of such lots must be presumed to understand the conditions upon which such spaces are dedicated to the public. Nor would such purchasers have any individual right of entry upon, or occupancy of such spaces.

The employment of such spaces for purposes of amusement,—such as circus performances and ball playing,—or for political meetings, or agricultural fairs, has no tendency to prove an acceptance by the public.

Officers for assessing taxes do not represent the public for the acceptance of dedications.

BAKER v. JOHNSTON.

The designation of a block by a number upon a village plat, laid out under the statute which requires persons making the plat to describe all lots intended for sale by progressive numbers, is not incompatible with a purpose on the part of the owner to dedicate the block to public uses.

*Heard July 8, 9. Decided October 5.*

Error to Van Buren Circuit.

This was an action of trespass *quare clausum*, brought by John R. Baker before a Justice of the Peace for Van Buren County, against James B. Johnston, the *locus in quo* being described as block number six, in the village of Lawrence, in Van Buren County.

The defendant pleaded the general issue, and gave notice that the land upon which the said alleged trespass was committed was not, at the time of the alleged trespass, the land and close of the said plaintiff, but was and is the land and close of the County of Van Buren, held in trust by said county for the use and purpose of a " public square; " and further, that on or about the 11th day of September, A. D. 1846, the said Baker, being the proprietor of said land, made and caused to be recorded in the Register's office of Van Buren County, a plat of the village of Lawrence, wherein and whereby the said Baker designated, set forth and described the parcel of land upon which said alleged trespass as alleged in said plaintiff's declaration to have been committed, as a public square, and therein and thereby gave and dedicated said parcel of land for public uses and for the purpose of a public square, whereby the fee of said land became vested in said County of Van Buren, to be held in trust by said county for the use and purpose of a public square and for no other use and purpose; that the said defendant is a citizen of said county and an acting officer of the village of Lawrence, to wit: one of the Trustees of said village of Lawrence; that the corporate limits of said village extend over and beyond, and include said parcel of land, and that if the said defendant

21 MICH.—o².

ever entered upon said land as described in said plaintiff's declaration he had a right so to do by virtue of his citizenship and as trustee of said village acting in pursuance of the orders and instructions of the President and Trustees of the village of Lawrence, improving and beautifying said grounds as a public square; and further, that the said land and close was not at the time therein stated, and is not the land and close of said plaintiff, but is the land and close of the public, to wit: the people of said village, and county and State, and was given and dedicated to the public by the said plaintiff on or about the 11th day of September, A. D. 1846, for the use and purpose of a public square, and that the same was accepted and appropriated by the public for said purpose at divers times and in divers manners, and that the said land is now, and for a long space of time has been, a public square, common and open to citizens and the public generally; and further, that the land had previously been dedicated and given to the public as a public square and common, and accepted and used by them for that purpose, and that it belonged to the public, and that the right to use the same as a public square had been recognized by said Baker, by a deed under and through which the defendant held land fronting on said square, to wit: his residence and dwelling-house on the south side of said square, whereby said plaintiff is estopped from denying the defendant the right to use the same as a public square, and the said square is recognized by said plaintiff in sundry deeds and conveyances to divers citizens, of land adjoining said square, whereby he is estopped from denying the same.

The notice appended to the plea showing that the title to the land described in the declaration would come in question, and the bond required by the statute having been given, the cause was certified into the Circuit Court for the County of Van Buren.

On the trial, the *prima facie* title of the plaintiff having been admitted, the defendant offered in evidence a record of the recorded plat of the village of Lawrence, described in the margin of it as "A plan of the village of Lawrence, as laid out and platted by John R. Baker, 1846." The description of the plat, and the certificates of acknowledgment and recording, are as follows:

Received for record, September 11, A. D. 1846, at 11 o'clock A. M.

E. O. BRIGGS, *Register*.

A plan of the village of Lawrence, as laid out and platted by John R. Baker, proprietor. This village is situated on the west half of section ten, in township No. 3 south, of range fifteen west, and surveyed by S. H. Blackman, County Surveyor. St. Joseph street and Main street are each six rods wide. Front street is four rods wide. All the other streets are each five rods wide. The lots are each five rods wide by ten rods long, except in those blocks where there are alleys. The alleys, being twenty feet wide, take off ten feet from the length of said lots.

All said streets and alleys, as laid out on the annexed plat, are hereby given for public uses, and the square marked "Public Square," is hereby given for said purpose of a public square.

Witness my hand and seal this 9th day of September, A. D. 1846.

JOHN R. BAKER. [SEAL.]

Executed in presence of
> S. H. BLACKMAN.
> E. H. KEELER.

STATE OF MICHIGAN, COUNTY OF VAN BUREN,—SS.

I hereby certify that on this 11th day of September, A. D. 1846, the above named J. R. Baker, to me well known,

personally acknowledged before me that he executed the above instrument freely, for the uses and purposes therein expressed. Given under my hand,

S. H. BLACKMAN, *Justice of the Peace.*

To the admission of which in evidence the plaintiff objected. 1. That the certificate of acknowledgment was not under seal, and does not state that he acknowledged it to be his free act and deed. 2. That the public square is numbered 6, in progressive numbers, showing that it was intended for sale, and not as a public ground. 3. That the public square was not described on the plat by its boundaries, courses and extent. The defendant's counsel then stated that he expected to show by other evidence that the plaintiff, subsequent to that time, had sold lots in said village, and conveyed them by deed duly acknowledged, referring to such recorded plat.

The Circuit Judge overruled the objections, and allowed the record of said plat to be read in evidence, to which the plaintiff excepted.

The character of the evidence offered by the defendant to sustain the defense, sufficiently appears from the charge of the Circuit Judge, on which the questions presented to this Court for review mainly arise.

The plaintiff requested the Court to charge the jury:

1. To establish a dedication of the land in question to the public as a public square, under the statute in force at the time of making the plat in question, so as to make it a defense in this case, it was necessary that the certificate of acknowledgment thereof should be under the seal of the Justice who signs the certificate of acknowledgment.

2. The act of 1850 does not, nor is there any statute which does, change this provision, and it is now necessary for the purpose of making the recorded plat evidence in

this case, that it, the certificate of acknowledgment, should be under the seal of the Justice.

3.   The plat given in evidence in this case cannot be considered by the jury as tending to prove a statutory dedication.

4.   To constitute a dedication, under the statute, so as to make it a defense in this case, the jury must find from the evidence that the dedication of the premises in question as a public square, was accepted by the public.

5.   To find this acceptance to have been made the jury must find from the evidence that there was a formal acceptance on the part of the public authorities or some organized body authorized to represent the public, or that the public, through, by or under such organized body, did acts according with such acceptance and inconsistent with a non-acceptance of it.

6.   The acts of individuals in their individual capacity, acting in concert or otherwise, but not under any organization known to the laws, could not constitute an acceptance.

7.   The making and recording the plat, under the statute, is but an offer to dedicate the public square to the public, and may be revoked by the dedicator at any time before it is accepted by the public.

8.   If the jury find from the evidence that the plaintiff, before an acceptance by any organized body authorized to speak for the public, or by the public authorities, entered upon the premises and cultivated the same or leased them to others for the purpose of cultivation, or let them to be cultivated on shares to crops, this is evidence from which the jury may find a revocation of the offer to dedicate.

8½.   If the jury find the act named in the last request done with the intent to revoke the dedication, then it is conclusive evidence of revocation.

9. If the jury find from the evidence, that the premises were fenced by a subscription made by the citizens acting in their individual capacity and without the direction, authority or consent of any organized body authorized to speak for the public, or by the public authorities, this is not evidence of an acceptance of the dedication.

10. If the jury find that political meetings were held upon said premises, or agricultural fairs, or Fourth-of-July celebrations, or other celebrations, or that the citizens planted shade trees upon it or plowed and leveled it, but without the authority, direction or consent of the public authorities, or of some organized body authorized to speak for the public, such acts are not evidence of acceptance, and cannot be considered by the jury.

13. If the jury find that the premises have never been assessed or taxed since the making of the plat, this is not evidence of an acceptance.

14. An acceptance by the public cannot be found by proving the declarations of citizens or inhabitants, that they considered and understood it to be a public square, and all such proof must be disregarded by the jury.

16. To constitute a dedication at common law, there must be an acceptance by the public authorities, or a user by and with the consent and sanction of the public authority.

17. If the jury find an intent and offer to dedicate, and that there was no acceptance by the public, and that the plaintiff entered before any such acceptance, and cultivated the land with intent to revoke the dedication, this would constitute a revocation of the offer to dedicate, and the public have lost their right by non-user.

Each of which, except the first, the Court declined to give.

The defendant requested the Court to charge the jury:

1. That if the jury find that the plaintiff, prior to March 20, 1850, being the proprietor of the land in question, caused it to be laid out and platted as a village, and caused such plat to be recorded in the office of the Register of Deeds of Van Buren County, without having acknowledged the same according to the statute, and that he conveyed lots in said village by deeds duly acknowledged, referring to such recorded plat between the time of platting and said 20th of March, 1850, then the fee of said land in question vested in this county for the uses and purposes therein expressed, to wit: a public square.

2. That if the jury find that the plaintiff, being the proprietor of the land in question, at any time intended, or, by his sayings or acts, held out to the public that he intended to give said land to the public for the purpose of a public square, and that the public, by any act or acts of theirs, accepted said gift by taking possession thereof and using the same as such public square, or by expending money upon it for improving, fencing, or other purposes, that it would constitute a dedication at common law, independent of the statute, of the land in question as a public square, and that the plaintiff would thereafter be estopped from denying the public the right to use it and treat it as such.

3. That if the plaintiff held it out to the public as a gift for a public square, and they, intending to accept it as such, and supposing it to be such, expended money upon it for its improvement, that they acquired rights in reference thereto which the plaintiff is estopped from denying. That it would be a breach of good faith in him, and the law will not permit him, to assert rights inconsistent with the rights thus acquired by the public.

4. That to constitute a dedication at common law it is not necessary that the legal title pass from the owner; nor

is it necessary that any grantee of the use should be in existence. All that is required is the assent of the owner of the land to the use, acceptance by the public, and the actual enjoyment of the use for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the use.

5. That by the public is meant not any particular corporation, or village, but any considerable number of the people of the village in common with the people of the vicinity.

6. That it is not necessary that there should be any formal act of acceptance by the "public authorities" as such; that it is sufficient if a considerable number of the people of the village, or vicinity, accept the same by acts, such as taking possession and using it for the purpose intended for any considerable length of time, and spending and laying out money upon it for that purpose.

7. That it is not necessary that it should be used by the public for any particular length of time, but a dedication may be established by acts on the part of the owner and the public, if unequivocal in their character, though occurring in a single day.

8. That when once the public have acquired a right to a public square, by dedication and acceptance, they cannot be divested of that right by long continued encroachments by any one, nor could any length of occupation destroy the right of the public short of a strict prescription, an exclusive possession thereof, for fifteen years.

9. That when the proprietor of a village has dedicated a piece of ground therein for a public square, and caused a plan of the village to be recorded, and has sold lots according to such plan, he cannot resume and exercise acts of ownership over the land thus dedicated which will deprive their grantees of any privilege which they might

derive from having such square left open. That in such case the proprietor is estopped from denying his grantees that privilege who have bought with reference to said plan.

And the Court so charged as requested by the defendant. The Circuit Judge further charged the jury:

"You will perceive that the plaintiff claims the exclusive right to the possession of block six (6), in the village of Lawrence, in this county. The defendant admits that the plaintiff once had that right; but claims that he has, by his own act, parted with it, and that he has not regained such right.

"The defendant claims that the plaintiff has dedicated the premises to the public, as a public square, and that in contemplation of law, it still remains a public square. A dedication of land to the public, means a solemn appropriation, or a setting of it apart to the use of the public. Dedications are of two kinds: 1st. Statutory. 2d. By the rules of common law. The first is where the person, desirous of making the dedication, performs certain acts required by the statute, which have already been read in your hearing. The second where the person, by his own acts, gives it to be understood, unqualifiedly, that he intends to set it apart to the public and to relinquish his own right to, or control over the same—except such right as in common with the public. But to constitute a complete dedication at common law, the public—and by this I do not mean, necessarily, all the people of the immediate vicinity, or even a majority of them—must by their acts accept the offer to dedicate, and the Court charges you that, at any time before such acceptance, the person making the offer may revoke it, but not afterwards.

"As to what acts are necessary to constitute an acceptance, the Court charges you that no particular and exclusive act or acts are necessary. The use of the property for the

21 MICH.—P2.

purpose for which it was offered, by any considerable number of the people; a formal vote of the people of the township, at a town meeting; or perhaps by the Board of Supervisors, would be acts tending to show an acceptance; but no particular one of those acts is absolutely essential to constitute a common-law dedication.

"If you find from the evidence that there has been a statutory dedication, the Court charges you that the person so dedicating cannot by re-entry upon the same revoke it."

To the refusal to charge as requested, and to the charge as given, the plaintiff excepted. Verdict and judgment having been entered for the defendant, the plaintiff brings the cause into this Court by writ of error.

*Thos. H. Stephenson* and *D. Darwin Hughes*, for plaintiff in error.

I. The Court erred in refusing the 5th, 6th, and 16th requests of the plaintiff to charge, and in giving the 5th and 6th requests of the defendant. The acceptance by the public, which is necessary to a complete dedication, must be a formal act of some organized public, or by user, under the sanction of such organization, and no act of mere individuals can amount to an acceptance of the dedication.

The cases upon this subject are quite decisive and based upon some principle. When the dedication of a highway or public square is accepted by the public, certain liabilities result and are incurred by the corporate authorities, and it is entirely inconsistent that these should be thrust upon them against their consent and contrary to their judgment. *People v. Jones, 6 Mich., 184; Fonda v. Borst, 2 Keyes N. Y., 48; Pope v. Town of Union, 3 C. E. Green, 282.* The acceptance must be "by some express, corporate, or official act, or by user, distinct and unequivocal."—*Bissell v. N. Y. C. R. R. Co., 26 Barb., 634.*

Streets and roads dedicated by individuals to public use, but not adopted by the local public authorities, or declared highways by statute, are not highways within the meaning of the highway acts, and there is no law by which any one can be compelled to keep them in repair.— *Oswego v. Oswego Canal Co., 2 Seld., 264; Holdane v. Cold Spring, 23 Barb., 123; Hobbs v. Lowell, 19 Pick., 405; Bowers v. S. M. Company, 4 Cush., 340; Page v. Weathersfield, 13 Vt., 429; Blodgett v. Royalton, 14 Vt., 288; Wright v. Tukey, 3 Cush., 290; Clements v. Troy, 16 Barb., 251; Indianapolis v. McClure, 2 Ind., 147; Underwood v. Stuyvesant, 19 Johns., 181.*

II.  The Court below erred in his rulings and instructions in reference to a statutory dedication in the following particulars:  *a.*  The record of the plat was not entitled to be read in evidence, for the reason that the acknowledgment was not under seal, and the instrument otherwise defective.— *Comp. Laws § 1133; Lee v. Lake, 14 Mich., 16; People v. Beaubien, 2 Doug., 271.*  The lot in question, or "public square," was numbered 6, in a regular series of numbers, as if for sale, and was not described by boundaries, courses and extent.— *Comp. Laws, § 1133.*  *b.*  The act of 1850 *Comp. Laws, §§ 1146–1147* does not in terms cure this defect.  The two sections, when construed together so as to give effect to all the language used, clearly shows this.  This first section applies only to conveyances and contract relations, and has no application to public grounds.  To give it any other effect would render the second section useless.  But the second section applies only to public grounds, and to cases where the plat has been "duly acknowledged."  *c.*  Any other construction would make the law unconstitutional, and void in its application to this case.

It is not denied that the Legislature may, by retro-

spective act, cure a mere technical defect which it might originally have dispensed with; but this rule is based upon an equity, and goes upon the principle that where there is a right, the Legislature may provide a remedy. It is therefore based upon and has its application to contract relations only. *d.* A statutory dedication requires the same acceptance by the public as a dedication at common law. All principle, and all argument and reason which applies to one, applies also to the other.

If no acceptance is necessary, then obligations and duties may be thrust upon the public contrary to their judgment and against their consent, and if they should refuse to accept, then the title would be out of the grantor, and it is difficult to see what would become of the land. It must remain unused and unimproved to all time, or be subject to caption by any individual or revert to the government. —*Lee v. Lake, 14 Mich., 12.*

It results, that before acceptance by the public, the dedicator may revoke a statutory dedication. That he may do this at common law is not disputed, and he may do it under the statute. By force of the statute, the fee is vested in the county for the uses and purposes expressed by the plat, and if the use and purpose are refused, or not accepted by those for whose benefit it is offered, no right attaches; no equity is created, and the act being voluntary and without consideration, may be revoked.

*Balch, Smiley & Balch,* for defendant in error.

The defendant pleaded, and at the trial proceeded upon, *three distinct grounds* as a defense to the action, viz:

1st. That there had been a statutory dedication by the plaintiff of the close in question to the public, in pursuance of the statute of this State (§§ *1133, 1146 and 1147, Comp. Laws*) whereby the fee of said land was vested in the

County of Van Buren for the uses and purposes of a public square.

2d. That there had been a *common-law dedication* by the plaintiff of the land in question to the *public,* and an acceptance thereof by the public, whereby the public had acquired an easement in said land, or a right to use it for the purpose of a public square.

3d. That the plaintiff had platted the village of Lawrence, describing said close as a public square, and sold other lots in said village, describing them by reference to said plat and according to said plat; that the defendant was his grantee of some of those lots by and through mesne conveyances, and had, by means thereof, acquired the right to have said square remain and be used for the purposes of a public square, and that the plaintiff was estopped from according to him that privilege.

The first error assigned is that the Court erred in admitting in evidence the recorded plat of the village of Lawrence, and the first reason urged is that the certificate of acknowledgment was not under the seal of the magistrate. The law of 1850 (*Comp. Laws,* § *1146*) was made for the purpose of curing defective acknowledgments, and made the plat as valid when these facts were shown as though the certificate of acknowledgment had been in proper form.—*Lee v. Lake, 14 Mich., 12.*

This act was constitutional and valid. It does not impair the obligation of any contract, it does not disturb or interfere with any vested right; it was merely binding a party to a contract which he had attempted to enter into, but which was invalid or voidable by reason of a neglect of a merely legal formality.—*Cooley on Con. Lim., pp. 374, 378; Thompson v. Lee County, 3 Wallace, 327; Gibson v. Hibbard, 13 Mich., 215.*

This statutory mode of dedication is not a mere offer to

the public; it is a conveyance to the county in trust for the public, provided by the Legislature, and vests the fee in the county.

The second objection to the plat was not well taken. The square is described on the plat by its boundaries, courses and extent. It is bounded by streets named upon the plat, its courses are indicated and described upon the plat, and its extent, also, is shown and may be ascertained from the plat itself.

The third was also groundless. The statute required the *lots* intended for sale to be described by progressive numbers. This was not a *lot* but a *block*. The lots were numbered by progressive numbers, but no lots were marked out or numbered upon this block at all, clearly showing that it was not for sale, but for a public square. It was marked "public square," and the deed or conveyance expressly states that it (block six) was given for a public square.

It was competent to give in evidence his acts and declarations, for the purpose of showing that he offered to dedicate the premises to the public, and it was proper to give in evidence the acts and declarations of the public to show an acceptance by them.—*2 Greenl. Ev.*, § *662; People v. Beaubien, 2 Doug., M., 256; People v. Jones, 6 Mich., 176; Lee v. Lake, 14 Mich., 12.*

The plaintiff contends that these several acts were not the acts of the public, but of the people in the vicinity, and that they could not accept the same. But it is well settled that in the case of dedications, the law does not require any specific grantee *in esse* at the time to whom the fee could be granted, or in whom the title could vest. In this respect it forms an exception to the general rule in transferring or creating an interest in lands. It may be done without any deed and without any person competent

to accept the grant as grantee.—*Wash. Eas.*, §§ *174*, *175* (*Old ed.*, *128*); *Cincinnati v. White's Lessees, 6 Pet., 435*; *Hunter v. Trustees of Sandy Hill, 6 Hill, 407*; *People v. Beaubien, 2 Doug.* (*Mich.*), *256*; *Rees v. Chicago, 38 Ills., 336*; *Morey v. Taylor, 19 Ills., 637*; *Warren v. Jacksonville, 15 Ills., 236*; *Alvord v. Ashley, 17 Ills., 369.*

The foregoing carries with it the further proposition that it is not necessary that there should be any corporation to whom the dedication is made. The village of Lawrence was not incorporated until the spring of 1869. (See *Laws of 1869, Vol. 2, p. 640*). The public remains the same since as before said incorporation, and consists of numbers outside as well as within the limits of the village and township. The public is an ever-existing grantee, capable of taking dedications for public uses.—*City of Cincinnati v. White's Lessees, 6 Pet., 435; Warren v. Jacksonville, 15 Ills., 240; Rees v. City of Chicago, 38 Ills., 336; New Orleans v. United States, 10 Pet., 713.*

The authorities all agree that the *public* may accept the dedication. What is meant by the public is not any corporation like a city, town or county, but the body of the people at large.—*Webster's Dic., Title:* "*Public*"; *Bouv. Law Dic., Title: "Public"; 1 Greenl. Ev., § 128.*

The people of the neighborhood,—the community at large,— without reference to the geographical limits of any corporation, constitute the *public*, and they, when acting in concert, may accept property offered to them as a dedication for public purposes.—*People v. Jones, 6 Mich., 184; Holdane v. Trustees of Cold Spring, 21 N. Y., 478; Green v. Town of Canaan, 29 Conn., 164; Guthrie v. New Haven, 31 Conn., 321; Waugh v. Leach, 28 Ills., 492; Ward v. Davis, 3 Sandf., 519–520; Wash. Eas. and Serv., 188 (Old ed., 139).*

The people are the *public*, and they may act in either

way:   1st.   Directly, where they themselves assemble in considerable numbers, or in any manner acting in concert, they express their approbation and acceptance of a gift or offer of dedication, as by the open and public use of property which is useful and beneficial to them.   2d.  Indirectly, through corporate bodies who, acting as their agents or representatives, accept by vote or resolution, according to the form of law, or by acts of user, such as repairing and working roads and ways, and improving public grounds. User by the public, by the people themselves, or by their representatives, is all that is required.—*Trustees of British Museum v. Mason, 5 Car. and P., 460; Jarvis v. Dean, 3 Bing., 447; Grand Surrey Canal Co. v. Hall, 1 M. and G., 392; Regina v. East Mark, 11 Q. B., 877; 15 Q. B., 17; Rex v. Petrie, 4 Ellis and B., 737; Cincinnati v. White, 6 Pet., 435; Hunter v. Trustees of Sandy Hill, 6 Hill, 407; Pearsall v. Post, 20 Wend., 111; 22 Wend., 425; Trustees of Watertown v. Cowen, 4 Paige, 510; Rung v. Shoenberger, 2 Watts, 23; State v. Wilkinson, 2 Verm., 48; Abbott v. Mills, 3 Verm., 521; State v. Catlin, 3 Verm., 530; State v. Trask, 6 Verm., 355; State v. The Mayor, 5 Port. (Ala.), 279; Spring Garden v. Northern Liberties, 1 Whart., 25; 2 Smith's Lead. Cases, note to Dovaston v. Payne; Morey v. Taylor, 19 Ills., 637; Warren v. Jacksonville, 15 Ills., 236; Alvord v. Ashley, 17 Ills., 369; Rees v. City of Chicago, 38 Ills., 336; Wash. Eas. and Serv., pp. 197, 200; 2 Greenl. Ev., § 662.* The public may acquire land by dedication from an incorporated town in whom the fee had been previously vested.—*State v. Woodward, 23 Verm., 92, 99.*

It was proper to show that the property had not been assessed for taxes for a period of twenty years and more, and to show that it was omitted by the assessing officer by reason of its being public property.  This tended to

show an act of acceptance by the public through one of its representatives.

That which has been dedicated is properly in charge of the corporate body within whose limits the property lies. Not because that corporate body owns it in fee, for it does not; neither does it own the exclusive use of it; but merely as the agent of the public it exercises the right to regulate the proper use of it by the public. *Wash. Eas. and Serv.*, *210, 201; 2 Smith's Lead. Cases, 5 Amer. Ed., 222; Com. v. Alburger, 1 Whart., 469, 485; Com. v. Rush, 14 Penn. St., 186; Watertown v. Cowen, 4 Paige, 510; Dubuque v. Maloney, 9 Iowa, 460; Lefler v. City of Burlington, 18 Iowa, 361; Comp. Laws, §§ 1140, 1146.*

The charge that there must be an offer to dedicate by the owner, and an acceptance by the public, is the law as recognized in this Court in several cases. *Lee v. Lake, 14 Mich. 12; People v. Beaubien, 2 Doug., M., 256; People v. Jones, 6 Mich., 184.*

The seventh request of the defendant was properly granted. No particular length of time is required as in the case of prescription to establish a dedication. Prescription goes upon the ground of a deed, and presumes one from long adverse possession, but in the case of a dedication no deed is required and none is presumed. A dedication may be found by the jury from acts of *the owner and the public*, if unequivocal in their character, though occurring in a single day. *2 Washburn on Real Prop., 456 (old ed., 459); Washburn Eas. and Serv., 187–190; Hunter v. Trustees, &c., 6 Hill, 407; Rees v. City of Chicago, 38 Ills., 336; 2 Smith's L. C., 5 Amer. Ed., 222.*

A dedication is, in its nature, irrevocable when it has once taken effect. At any time, in the case of common-law dedications, before acceptance by the public, the owner

21 mich.—q².

may revoke the offer to dedicate. But when once. the public have accepted the offer, the right: is vested, they have·secured the easement, and the owner cannot reclaim it by any encroachment thereon short of a prescription. *Wash. Eas. and Serv.*, *210*, *211*, *188*; *Com. v. Alburger*, *1 Whart.*, *469*, *485*; *2 Greenl. Ev.*, *Sec. 665*.

. The defendant was the plaintiff's grantee of lots in said village of Lawrence, described in the deeds "according to the recorded plat thereof." The recorded plat described this block (six) as a public square, and donated it as a public square in the conveyance accompanying it under the hand and seal of said grantor. The right of the public, and especially that portion or those members of the public who stood in that relation to the plaintiff, could not be denied by him. He is estopped from disputing their right to have said square left open and used for the purposes indicated upon the recorded plat. *Sinclair v. Comstock*, *Harr. Ch.*, *404 and 412*; *People v. Jones*, *6 Mich.*, *176*; *People v. Beaubien*, *2 Doug.*, *M.*, *256*; *Lee v. Lake*, *14 Mich.*, *12*; *2 Greenl. Ev.*, *Sec. 662*.

CAMPBELL, CH. J.

The action below was an .action of trespass for breaking the close of Baker, and defendant justified on the ground that he was acting on behalf of the village authorities of Lawrence, Van Buren County, in entering upon the premises as a public square lawfully dedicated by Baker, and accepted on behalf of the public so as to preclude him from withdrawing the dedication. Most of the questions presented by the assignment of errors relate to the acceptance and sufficiency of the dedication.

In September, 1846, Baker made and caused to be recorded a plat of certain lands, including the village of Lawrence as then projected by him. On this plat, which

was not so certified as to become a valid recorded plat under the statutes, the streets were laid out and sufficiently defined, and the sizes of the lots and blocks were all given. The objection that the square in question was not described by its boundaries, courses, and extent, is not well taken, because the owner's certificate, appended to the plat, was designed to explain all the dimensions, courses, and distances not otherwise made plain, and is a very proper part of the plan, and should be read with it. Combining the plan and the certificate signed by Baker, there is no uncertainty of the kind mentioned. The square is sufficiently identified, and the only contention is concerning the public rights in it.

It is claimed, however, that, as this square, although marked "*Public Square*," is also marked as "*Block No. 6*," the latter designation is inconsistent with any public destination, because the statute requires the person making the plat to describe "*all the lots intended for sale by progressive numbers.*" We do not think that this provision would invalidate the designation of a block by its number for any lawful public purpose. It was merely designed to produce some degree of harmony in the numbering, and to facilitate the location and description of lots. And in case a block offered to the public should be refused, it is evident that its being numbered with the rest in regular course would then tend to prevent any break in the continuity of the numbering, and lead to harmony instead of confusion. We think there is no force in this objection. It might also be suggested that as the plat was not completed so as to make it a statutory dedication when executed, it might not be proper to test it by the statute.

The plat was made and deposited for registry by the owner of the land, and he subsequently sold lots which were described by reference to it. A question now arises

whether this has, under the law of 1850, operated to make the plat effectual as if it had been legally complete in the first place.

The statute of 1850 consists of two sections, both of which profess to be retrospective. The first section in terms provides that where proprietors have platted lands and caused the plat to be recorded, without the proper acknowledgment, and have sold and conveyed lands by reference to the recorded plat, it shall have the same effect as if legally acknowledged and recorded. The second section provides that where a plat has been duly acknowledged, the record theretofore made shall be evidence as against the makers of the sufficient dedication, gift, and grant to the public of any portion thereof represented in such plat as a *public square.* Both sections save rights in present litigation.

· If the first section is broad enough to cover public squares, then . there was no occasion at all for the second. And we think it clear that it was not designed by either of these sections to create a dedication of a public square by any thing which did not operate when made as a complete conveyance in fee to the county of lands properly defined as · intended for public purposes. It was evidently considered that a difference might exist in the legal condition of lands destined for common highways and for other purposes, and that a dedication for one might not suffice for another.

From time immemorial it has been recognized commonlaw doctrine that land might be dedicated for use as a common highway without grant or covenant. An intention to dedicate, and a sufficient public acceptance by user or otherwise, made out a complete public easement. And where an open square was designed merely for the enlargement of a highway, and intended to be used as such, it would fall

within the same category. But there seems to be no reliable foundation for the idea that there could, at common law, be any setting apart of lands for any other uses · by dedication. Commons and analogous rights are always assumed to rest in grant; and all of those pleasure grounds and ornamental grounds which naturally concern the dwellers in the vicinage more than travelers, owe their existence in all probability to special grants and agreements. No other origin is anywhere suggested, and the common law furnishes no precedents for any other. There are many royal parks and liberties regulated by law, but we find no trace of private dedications for such purposes, analogous to highway dedications. An act has been passed during the present reign in Great Britain providing for the care of such grounds in certain cases, but it recognizes none except where a grant has been made to commissioners, trustees or some other body, and only interferes where such grantees neglect to keep up the grounds as they should be. The law is set out in full in *Tulk v. The Metropolitan Board of Works, L. R., 3 Q. B., 93.* No such thing as a right by mere dedication appears to be recognized anywhere. In *Pearsall ˙v. Post, 20 Wend., 111.,* affirmed *22 Wend., 425,* it was held there could be no such dedication for a public landing, and the Supreme Court intimated very plainly that there could be no legitimate dedication except for highways, and it is somewhat difficult to determine how far the Court of Errors would have gone beyond them, if the case had called for a decision upon public squares.

But the decisions which have predominated, in this country, have undoubtedly assumed that the mere want of a grantee would not defeat a dedication of lands for well-defined public purposes. They have likened them to charitable trusts, which will not always fail for lack of a trustee. But as the general doctrine in the United States has not

gone far enough to sustain vague charities (unless in a few states where the English doctrine is more or less favored), the utmost that can be said is that where the purpose is clear and well-defined, the courts will protect lands which have been dedicated to public uses, and which are so situated that the public purpose can be legitimately carried out. And as in the case of charities, the trust can never become operative until some authorized body exists to assume its management, so in the case of these public grounds, there is some difficulty in maintaining the public interest, unless it has some legitimate guardian. And there is no such settled law as would fix any such interest as binding against the land owner in all cases without some such guardianship. And there is no settled line of decisions which binds any one by a dedication to purposes which are not defined. An offer for public uses amounts to nothing until it is agreed what those uses shall be. And this seems to have been the difficulty which was sought to be remedied by section 2 of the statute of 1850.

There was no statute in force providing for the care of any public grounds not used as highways, except where they come under the control of incorporated cities and villages. The law regulating the laying out of plats required that it should appear not only what the public grounds were, but also whether they were "intended for streets, alleys, commons or other public uses," and the plat thus designating these grounds, and properly acknowledged and recorded, operated as a conveyance to the county in trust for the purposes designated. The original statute contemplated such trusts as could be deduced from the plat itself, without resort to parol evidence. And where land had simply been designated as a public square, it did not necessarily mean more than that it was for public uses, without showing what uses were intended. A dedication could be made

out by showing a parol agreement applying this general designation to specific uses. But the plat alone would be wanting in precision, and would not accurately define the trust purposes. The space may have. been destined for commons, or · schools, or county buildings, or burial purposes, or any other use which could be legitimately regarded as public; and nothing but extrinsic evidence or subsequent agreement could remove the ambiguity. And it is well known this objection had been suggested in reference to plats then existing. It certainly had always been our policy to discountenance the introduction of parol evidence to establish or define trusts. Our statute of frauds then in force explicitly required them to be in writing, and there is no reason to suppose that the statutory conveyance in the form of an acknowledged plat was expected to be any less certain than if it had been a deed for the same purposes.

When the curative act of 1850 was passed, probably most public squares which had not been resumed by the proprietors had become set apart, by their concurrence, to specified and legal purposes; and it was intended by the second section of that act to legalize the uncertain description which had generally been made certain by the parties, where the public right was not in controversy, and to prevent the vagueness of the original dedicatory act from defeating it, but it was not intended to affect any trust for public squares, unless the form of the statute had been complied with by such an acknowledgment and record as would operate originally as a conveyance to the county, of all grounds whose purpose had been sufficiently designated. It legalized such dedications as had assumed the form of complete statutory conveyances, and were only defective in not fully defining the purposes for which public squares were intended.

The present case must be determined by such principles as would govern it independently of the statute. There is no difficulty in ascertaining an original intent to have this land set apart for some public purpose. And the difficulty suggested by the record lies in ascertaining whether enough has been done to apply that intent and to make it irrevocable.

We think it must be assumed as the generally understood law at this day, and as law here, that there may be a dedication effectual against the land owner, without a statutory and formal conveyance to the county. It would conflict with recognized usage to hold otherwise. But it is not to be denied that the introduction of this anomaly brings with it many difficulties, and has had no tendency to simplify these rights, or to diminish *litigation* upon them. And the authorities furnish no adequate light upon the subject. There are many cases showing that such dedications may be made. But there are few, if any, which give much aid in determining how and when such dedication is made irrevocable by the acceptance of the representatives of the public. And we can only reach a conclusion on this subject by considering the various elements which must be taken into the account.

If the square in controversy was intended as an expansion of a street, and thus made for what in law would be merely a highway, there would be no practical difficulty in determining its condition. It would fall into the same category with other roads, and be governed by the rules applying to such easements. But the plat shows that it was to be kept as a block separate from the adjacent streets and bounded by their exterior lines. And all the evidence negatives the idea of any other design. It was meant for some other purpose than a passage way. As a street it could have been made public by the action of the

highway officers, or by a sufficient and continuous user for travel. But there are no township officers who have charge of any other public lands, except school district officers, and the purposes to which a square may be devoted would not all admit of any general user for specific purposes. We are met at once by the difficulty that lands intended for different public purposes cannot all be treated alike. And we also discover that in some places and for some purposes there are public officers representing the public, and there is a representation of the public also by a certain numerous class of undefined individuals; while in other places and for other purposes, it is not so easy to find any undoubted public representatives, whose official acts or whose customary user can be regarded as binding the commonwealth or municipality. As no land can become public without an acceptance by some one of the offer made by an attempt to dedicate, the question, who can make this acceptance, and in what way can it be made, is one of much nicety and great importance. And the time during which the offer should be regarded as open, is also important to be determined.

When a land owner sets apart portions of his plat for public purposes, it is done with the expectation that the use of such portions for those purposes will be advantageous to the rest of the property, or to the original proprietor. He has a right to expect that within a reasonable time the land will be put in condition to subserve those uses. If given for public buildings; there must be some reasonable assurance that they will be built, and if for ornamental purposes, that it will be made available for those. He cannot be bound to wait and abstain indefinitely from the use of his property upon the chance that at some time or other in the remote future the public use may be secured. And his efforts to induce such acceptance and use cannot

21 MICH.—R².

properly be regarded as anything more than repetitions
and continuances of his offer, requiring some responsive
action. There can be no estoppel in favor of those who
are not themselves estopped. And the public can only bind
the land owner by acting upon his dedication before he
has an equitable right to withdraw it.

Where the land platted falls within a city or incorpo-
rated village, and there are corporate authorities having
control over public lands and easements, there is no difficulty
in holding that the acceptance must come from the
authorized public agents, in order to give the public any
rights in the dedicated premises. If those who have
authority neglect or decline to act, then no force can be
given to the acts of those who have no authority. The
statutes have provided for certain cases of public user of
highways, but for nothing further. And dedications for
other than highway purposes require acceptance in a
different way.

But it sometimes happens, and it was so in the case
before us, that land is platted where no incorporation
exists, and where there is no certainty that the locality
will become an incorporated town or city within any
reasonable time. The population required for an incorpo-
rated village must be at least three hundred to the square
mile, and the village itself must contain that number. And
while that must be a very small village which falls short of
three hundred, yet there are such villages, and if persons
should see fit to provide squares and other conveniences and
adornments for these small settlements, there would seem to
be no sound reason why their validity should not be main-
tained, although an intention to make a dedication for such
limited purposes may not perhaps be so easily inferred as
for larger settlements. In determining whether a dedication
has become complete, it will become necessary in such a

case, as it is in the other case, to ascertain what the person dedicating must be assumed to have reasonably expected would be done by others to meet his offer, and to secure the application of the property to such uses and in such a manner as will carry out the design of the dedication. And it may also become a serious question how far the want of corporate capacity may interfere with the acceptance of a dedication, that is lacking in some of the elements of certainty.

Where land is dedicated as a public square, without other qualification, and such dedication is accepted, the particular uses to which it is devoted must be within the determination of one or both of the parties. The statute of 1850 indicates an intention to make such dedication sufficient, where the plan is legally executed, and if so, it would seem to follow that the designation of the particular use should rest with the public authorities. But where there are no public authorities, and where the dedication is not statutory, the land owner must have it in his power to determine its purposes until by some action estopping him from further interference, he has bound himself to acquiescence in some definite use. And we think such acquiescence is not impossible.

If the owner should covenant with others, assuming to act for the general interests, that the land, upon conditions performed, should be inviolably and irrevocably devoted to any public use, unless those conditions were such as to require some permanent organization to perform them, it would seem that if the covenantees had any individual interest to connect them with the locality, an equity would arise to enforce the obligation. The English act of Parliament before referred to appears to rest on such an assumption, and to regard such an obligation as binding. And if any voluntary agents should, at his request, and

for the public benefit, expend money and assume actual possession of the premises upon the agreement on his part that such possession should be regarded as a definite acceptance for the public, we see no good reason why the same principle should not apply, rendering their joint acts analogous and equivalent to a partly-performed parol agreement between individuals. But any thing less than this would be too vague and shadowy a title to be susceptible of enforcement. The statute of frauds will not bear any exception which cannot rest on the substantial equities of a partly-performed contract; and the principles of equitable estoppel will not apply where there has been no distinct and encouraged action in reliance upon the promises or representations of the land owner, which he is bound to know have been based on such reliance. And where no one legally represents the public, he cannot be compelled to recognize volunteers unless he has dealt with them and consented to admit their agency.

The facts introduced in evidence in this case to show a complete and accepted dedication, are of different kinds and significance. The sales, by reference to the plat, were admissible to bear upon the original intent to dedicate. But upon this intent the plat is too explicit to require further aid, and the intent is not disputed. Such sales have no tendency to prove an acceptance by the public, or an estoppel in favor of the public. It is not material to consider how extensive the private rights would be in lands intended for public enjoyment, and not essential to any right of passage or individual profit. Purchasers by a plat must understand upon what conditions public spaces are promised by it, and if the public do not accept the grant, there has been no violation of the grantor's implied covenant. Streets, affording easements directly profitable and necessary to the use of lots, may stand on a different foot-

ing. But the fact that the defendant in this case was a lot owner, could give him no right to enter upon these premises, and could not qualify an entry made in a public capacity and not for private purposes. If the land is not a public square, there is nothing tending to justify the entry. If it is such a square, the ownership of lots became immaterial. No individual could have a private right of occupancy in any such premises.

Neither could a public acceptance be made out by the testimony showing that the premises had been used by the inhabitants or by traveling showmen for purposes of amusement, like ball playing and circus performances. Any vacant private property may be and is usually resorted to for such purposes, and they are in no sense public purposes. It is at least questionable whether an express dedication could be maintained for any such objects. *Pearsall v. Post* is decidedly adverse to such an idea, and in the case of *Lee v. Lake, 14 Mich. R., 12*, such acts were not regarded as very material. The use for agricultural fairs is repugnant rather than favorable to the idea of a public acceptance. Such a use is no way conducive to public ornament and to the embellishment of a village. The fairs occur at distant periods, and the close fences and unsightly buildings, necessary for the purposes of stock exhibition, must be during the remainder of the year eyesores rather than attractions. Such uses have never been recognized as calculated to show the acceptance of a dedication of public grounds in a village, and we think, as intimated in *Lee v. Lake*, that they have no such tendency. So far as any of the proof offered in the case has any significance, it tends to show the purpose of dedication to have been to create an ornamental park, which is now perhaps the commonest purpose for which dedications of public spaces are devoted. And the only evidence of any joint action bearing

upon the question of the acceptance of the dedication by any persons having a right as against Baker to claim as representing the public, is to the same effect. That evidence requires some notice.

It appears by the testimony of Baker that he had no idea of revoking his offer to dedicate until the year 1865, when he resumed possession. It also appears that some two or three years previous to this (the witnesses not all identifying the time precisely), there was some concerted action in which the plaintiff is claimed to have taken part, for the purpose of leveling and fencing the square, and planting it with shade trees. A subscription in writing was made by the plaintiff and others, and a general meeting or "bee" was had to do the work expressly for the public, and the enclosure was made in this way.

It is not within our province to decide how far this proof went, but we regard it as material and very significant. Under repeated decisions of this Court such a subscription could have been enforced as a valid contract. *Underwood v. Waldron, 12 Mich. R., 73 ; Comstock v. Howd, 15 Mich. R., 237.* If it was the understanding between plaintiff and these parties who joined in the enterprise, that this was to carry out the design of preparing the ground for the purpose of its dedication as a square or park, we think that in the case of an unincorporated village no better mode of acceptance and agreement could be devised, and that there is no reason why the contract and arrangement, so completed, should not be held binding. We think there is nothing else in the case which would justify a conclusion that the dedication had become irrevocable, but we think these transactions, if proven to the satisfaction of the jury, would be sufficient. And if so established, the subsequent acts of Baker in resuming possession gave him no rights, and were unlawful. The assessment or non-

assessment of the premises we do not regard as material, as the assessing officers do not represent the public for the acceptance of dedications.

The views we have expressed render it unnecessary to refer more particularly to the several assignments of error. The instructions and rulings in conflict with these views were erroneous. The judgment must be reversed, and a new trial ordered, with costs to plaintiff in error.

The other Justices concurred.