JOHN M. GIFFEN v. THE CITY OF OLATHE *et al.*

1. TOWN-SITE — *Plat, Recorded* — *Not Acknowledged* — *Dedication to Public Use.* Where a town-site was surveyed and laid out in lots, blocks, streets and alleys, and a plat thereof made and lithographed, and distributed among the occupants of said town-site, and one of the lithographed copies of said plat was afterward recorded in the office of the register of deeds of the county where the town-site was situated, but the same was not acknowledged, and said town-site was preempted by the president of a town company, duly incorporated, and a patent issued from the general government to the president of said town company, in trust for the use and benefit of the occupants of said town-site according to their respective interests, and G., an occupant of said town-site, executes and accepts deeds to property upon said town-site, in which the lots are described by number and block, as described in said plat, *held,* that notwithstanding the fact that said plat was not acknowledged, there was a dedication to the public use of the streets and alleys as shown by the plat, and that the validity of said plat has been recognized by G.

2. STREETS AND ALLEYS — *Private Occupation* — *Paramount Right of Public.* Where land in a city was dedicated to public use for streets and alleys, but certain portions of said streets and alleys so dedicated were not needed or used by the public for more than fifteen years, *held,* that the authorities of said city might order said streets and alleys opened, and all persons occupying any portion of the same will be presumed to hold them subject to the paramount right of the public.

*Error from Johnson District Court.*

INJUNCTION.  The facts are stated in the opinion.  Judgment for the defendant *City,* and others, at the January term, 1888.  The plaintiff *Giffen* brings the case to this court.

*A. Smith Devenney,* for plaintiff in error.

*S. T. Seaton,* city attorney, for defendants in error; *F. R. Ogg,* of counsel.

Opinion by GREEN, C.:  This was an action for an injunction against the city of Olathe and its officers to restrain them from enforcing certain orders to open portions of certain

streets and alleys which had been inclosed by the plaintiff below. The trial court made the following findings of fact:

"1. The defendant is a city of the second class, duly incorporated and organized as such under the laws of the state of Kansas.

"2. In the year 1857, John T. Barton surveyed and laid off the southeast quarter of section 26, and the northeast quarter of section 35, all in township 13, of range 23, in Johnson county, Kansas, into lots, blocks, squares and streets for a town-site, and platted and prepared a map of the same, and designated it as the town-site of Olathe, Johnson county, Kansas.

"3. At the time Barton located on said lands and commenced surveying and platting the same, there were no other occupants thereon except those interested in the town company, but while the same was being surveyed and platted, other parties came and located on said lands with the view of purchasing lots.

"4. Barton entered said lands at the general land office at Lecompton, Kansas territory, on the 17th day of May, 1858, the S. E. ¼ of said section 26 (being the quarter-section in which the lots, blocks and streets hereinafter mentioned are all situated) being entered by said Barton as 'President of the Olathe Town-Site Corporation.'

"5. On said 17th day of May, 1858, there were twenty-seven inhabitants on said lands, some on each of said quarter-sections.

"6. Before the completion of said survey and the platting of said town-site, Barton formed a town company of not less than five members.

"7. On the 20th day of February, 1857, the legislature of Kansas territory passed the act offered in evidence, 'To incorporate the city of Olathe.'

"8. Afterward, and about the month of May or June, 1857, the inhabitants of said town-site held a town or city election, and said John T. Barton was elected mayor.

"9. On the 11th day of May, 1858, the legislature of Kansas territory passed the act offered in evidence herein 'Incorporating the city of Olathe.'

"10. In the summer of 1857, said John T. Barton had the map of said town-site lithographed, and said town company distributed numerous copies thereof among the inhabitants of said town-site and throughout the country, and Barton filed a copy of said map or plat in the office of register of deeds

of Johnson county, but that the copy filed as aforesaid was not acknowledged, and there was no certificate or other evidence thereon that it was filed by Barton or anyone acting for said town company.

"11. The plats offered in evidence, including the plat filed in the register of deeds' office in 1868, are copies of the original plat and map made from the original survey of said town-site by said Barton in 1857.

"12. Said town company sold the lots on said town-site by the numbers of the lots and blocks as designated on said plat and by reference thereto, and the numbers of the lots and blocks and the names of the streets in said city ever since have been and now are the same as designated on said original plat, and the lots and blocks and streets in said city have uniformly been known and designated as on said original plat.

"13. On the 26th day of March, 1862, the United States issued a patent to the S. E. ¼ of section 26, township 13, of range 23, in Johnson county, Kansas, being the quarter-section in which the lands and streets in controversy are situated, to John T. Barton, 'President of the Olathe Town Company, in trust for the several use and benefit of the occupants of the town-site of Olathe, according to their respective interests, and as the proper corporate authority under the town-site act.'

"14. Barton has not executed any deed or other conveyance of said town-site to said town company.

"15. The proclamation of the president of the United States opening the lands on which said town-site was located for entry and settlement, was officially published in the Lecompton *Democrat* on the 26th day of March, 1858.

"16. At the time of the survey of said town-site in 1857, as aforesaid, the lots and blocks in said town-site, including the blocks 9, 24, and 25, and the lots in said blocks, were staked off as surveyed and platted.

"17. The streets in said city were worked and graded, have been worked and graded by the city authorities as originally surveyed and platted as aforesaid, and in the greater part of said town-site the lots and blocks have been fenced or occupied by buildings, and the travel has been on the streets as originally platted.

"18. The portion of Prairie street between blocks 9 and 24, and that portion of Spruce street between blocks 24 and 25, have never been worked or graded by said city, or traveled as streets by the public.

"19. In 1871, the plaintiff being employed by the city council of Olathe for the purpose, made a re-survey of said town-site, traced the blocks and streets, and made a plat according to the original survey and plat thereof, and in said survey surveyed said blocks 9, 24 and 25, but did not trace said Spruce and Prairie streets through or between said blocks, and the map of said re-survey was submitted to and approved by the city council.

"20. Plaintiff has been a resident of the town-site of Olathe since March, 1858, and was a resident of the quarter-section of land in which the said lots, blocks and streets are situated, on May 17, 1858.

"21. Plaintiff took possession of said blocks 9 and 24, and part of block 25, in 1866, plowed the same, and in 1867 fenced said lands, and ever since said time has had all said premises inclosed in one field, farming the same from year to year during all of the time since 1867, and was in the sole, exclusive and undisturbed possession of said premises, under claim of ownership and color of title from the year 1866 until the 18th day or 19th day of July, 1885, at which time said defendant by its officers committed the acts complained of in plaintiff's petition.

"22. On the 18th or 19th day of July, 1887, the street commissioner of said city, acting under the orders and direction of the mayor and city council of said city, cut down and destroyed the fence of plaintiff across said Prairie street at the point where said street intersects the east line of blocks 9 and 24, and across Spruce street at the intersection of the east line of blocks 24 and 25, and opened said streets between said blocks, and the cost to plaintiff of repairing said fence was $7.

"23. Said streets have no outlet from the west line of said blocks, and there was, at the time the same were opened by said street commissioner as aforesaid, no public need for the use of said streets through said blocks.

"24. All of said lots have been taxed since 1857, and at the time plaintiff took possession of said lots in 1866, he held tax deeds from said Johnson county to a large number thereof.

"25. Plaintiff has sold lots in said blocks since his occupancy of the same as aforesaid, and conveyed said lots by the numbers of the lots and blocks, 'as described in the plat of the town of Olathe.'"

And from the foregoing facts, the court made the following conclusions of law:

"1. Said Spruce and Prairie streets are legal public streets through and between said blocks above mentioned.

"2. The city of Olathe has the right by its officers to open said streets for the use of the public between said blocks 9, 24 and 25, and to remove all obstructions therefrom, including the fences of the plaintiff erected thereon.

"3. The plaintiff is not entitled to the relief prayed for in his petition.

"4. The temporary injunction heretofore granted herein, should be dissolved."

The contentions of the plaintiff in error are, that there was no lawful entry of the town-site of Olathe; that the patent thereto is void; that there was neither a statutory nor common-law dedication of the town-site; and that there was an adverse enjoyment of the alleged streets and alleys for the statutory period of fifteen years.

The claim is made in behalf of the city that there was a dedication of the streets and alleys and public grounds, as platted by John T. Barton in 1857, and subsequently recognized by the plaintiff in error, and that by reason of such recognition he is estopped from questioning the validity of such plat and dedication.

I. To determine the question of the sufficiency of the dedication, it will be necessary to consider the act of congress "For the relief of citizens of towns upon the lands of the United States, under certain circumstances:"

"That whenever any portion of the surveyed public lands has been or shall be settled upon and occupied as a town-site, and therefore not subject to entry under the existing preemption laws, it shall be lawful, in case such town or place shall be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judges of the county court for the county in which such town may be situated, to enter at the proper land office and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests; the execution of which trust, as to the disposal of the lots in

such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated," etc. (5 U. S. Stat. at Large, 657.)

We are of the opinion that this act of congress conferred sufficient authority to enter the land for the purposes indicated, and this included streets, alleys, lots, blocks and squares. This seems clear from the decision of the supreme court of the United States in the case of *Ashby v. Hall*, 119 U. S. 526, in construing the act of congress of March 2, 1867, which is identical, almost, in language with the above. The court said:

"As thus seen, the act required the entry of land settled upon and occupied, to be in trust 'for the several use and benefit of the occupants thereof according to their respective interests.' The very notion of land settled upon and occupied as a town-site implies the existence of streets, alleys, lots and blocks; and for the possession of the lots, and their convenient use and enjoyment, there must of necessity be appurtenant to them a right-of-way over adjacent streets and alleys. The entry of the land carried with it such a right-of-way. The streets and alleys were not afterwards at the disposal of the government, except as subject to such easement."

To supplement the act of congress, the territorial legislature passed § 11 of chapter 156 of the Laws of 1855, and § 11 of chapter 24 of the Laws of 1859, which provided that —

"The plats of all cities and towns which have heretofore been laid off, or which may hereafter be laid off on public lands within this territory, shall be filed with the register, and recorded as aforesaid, which plats shall accurately set forth the streets, squares, alleys, parks and avenues, and the width and extent thereof, which are intended for public use, and when so filed they shall be deemed a sufficient conveyance of such streets, squares, alleys, parks and avenues to such purposes, and any person occupying or in anywise obstructing such streets, squares, alleys, parks or avenues shall be held liable for damages as if such streets, squares, parks or avenues had been absolutely conveyed to the public use as in the third section provided."

As suggested, the words "as in the third section provided" should be "as in the sixth section provided."

On the 17th day of May, 1858, this land upon which the town-site was located was entered at the general land office at Lecompton, by John T. Barton, as president of the Olathe Town-site Corporation; and on March 26, 1862, the United States issued a patent therefor to the said Barton, president, etc., in trust for the benefit of the occupants of the town-site of Olathe, according to their respective interests, under said act of May 23, 1844. This settles the question of the dedication of this land for a town-site, and as indicated in *Ashby v. Hall*, supra, necessarily implies the existence of streets and alleys. The evidence shows, too, that there was an acceptance. The site was surveyed into lots and blocks, streets and alleys, the occupants incorporated, and the officers made deeds in accordance with the plat. The rule with reference to dedication and acceptance has been stated by Judge Dillon, in his work on Municipal Corporations. (Vol. 2, § 628.)

It should be remarked, however, that an incomplete or defective statutory dedication will, when accepted by the public, or when rights are acquired under it by third persons, operate as a common-law dedication by the owner. The supreme court of Illinois has held that an unsigned and unacknowledged plat recorded and acted on, is effective as a common-law dedication. (*Godfrey v. City of Alton*, 12 Ill. 30; *Alvord v. Ashley*, 17 id. 363; *City of Belleville v. Stockey*, 23 id. 441; *Waugh v. Leech*, 28 id. 488; *Field v. Carr*, 59 id. 198; *Village of Fulton, v. Mehrenfeld*, 8 Ohio St. 440; *Baker v. Johnston*, 21 Mich. 319; *Banks v. Ogden*, 2 Wall. [69 U. S.] 57.)

The court below found that the plaintiff had taken tax deeds from Johnson county for a large number of lots, and several in the blocks which he had inclosed, and had conveyed lots by the numbers of the lots and blocks "as described in the plat of the town of Olathe." This, we think, would amount to a dedication, so far as he was concerned. "Dedication of streets and public places properly marked and designated upon the plat of a survey, of urban property, is

complete upon conveyance being made of lots included in such survey, with reference to such plat, though not properly certified for record. Such conveyances work an estoppel in favor of the grantees, and no subsequent revocation can be made without their consent, and the rights so granted may be adopted and enforced by the public authorities." (*Bartlett v. Bangor*, 67 Me. 460–465; 2 Dill. Mun. Corp., § 640, and cases there cited; *Brooks v. City of Topeka*, 34 Kas. 277.)

We do not think the plaintiff in error is in a position to question the entry of this land for the purpose of a townsite, or to challenge the validity of the patent issued by the government.

II. We consider next the claim of the plaintiff in error of the non-user of the portions of Prairie and Spruce streets and the alleys inclosed, and the adverse enjoyment of the same for the statutory period of fifteen years. The limitation claimed by the plaintiff in error has no application to streets and alleys. The city of Olathe does not own the streets and alleys in question, or any portion of them, and could make no disposition of them. And no *laches* upon the part of the city, or any of its officers, could impair the rights of the traveling public. This court has said in the case of *Gould v. City of Topeka*, 32 Kas. 485:

" In Kansas, as well as elsewhere, cities do not own the public streets. In Kansas, the fee-simple title to the streets is vested in the counties in which the cities are situated, and is so vested, not for the benefit of the counties or the cities merely, but also for the benefit of the entire traveling public, and the cities are vested only with the control and management of the streets; and this control and management is not merely for the benefit of the cities themselves, but is also for the benefit of the entire traveling public. This control of streets, however, is not wholly discretionary, or judicial, or quasi-judicial, or legislative, and is not divided or shared with other corporations, boards or tribunals, but it is absolute and exclusive in the cities; and, as we think, it is not conferred upon them merely as a benefit which they may exercise, or not, at their option or discretion, but is imposed upon them also as an absolute and mandatory duty, which they have no right to

evade or avoid. Generally, they must keep their streets in a safe and proper condition at their peril."

Judge Dillon has stated the rule in his work on Municipal Corporations (vol. 2, § 675):

"It will perhaps be found that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are within ordinary limitation statutes. It is unsafe to recognize such a principle."

It seems clear from reason and the great weight of adjudicated cases, that the statute of limitations cannot be invoked against cities for a failure to open portions of streets and alleys dedicated to the public use. Cities, under our law, are charged with the imperative duty of opening and keeping in repair these thoroughfares; the obligations they owe to the public are paramount, and should control. This duty resting upon the municipalities, and these obligations of a public interest must be exercised as the public wants demand.

"Immediate opening and user, by the public, of all the streets for their entire length, or immediate formal acceptance by some competent public authority, cannot be necessary to give effect to a dedication of land to the public use of a street, by the making of a town plat, and the selling and conveying of lots with reference to the plat. A municipality must be permitted to wait its reasonable time for opening and improving its public streets, as its own resources and the public need may allow and require, without thereby rendering its streets subject to appropriation for the exclusive use and enjoyment of individuals." (*Town of Lake View v. Le Bahn*, 120 Ill. 92.)

"Until the time arrives when any street or part of a street is required for actual public use, and when the public authorities may be properly called upon to open it for public use, no mere non-user of any length of time will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public. This principle is fully recognized and applied in the two following cases, closely analogous in their facts to this case: *Town*

*of Derby v. Alling,* 40 Conn. 410; *Henshaw v. Hunting,* 1 Gray, 210. If this principle is a sound one in relation to the plats of cities and villages in the old states of Connecticut and Massachusetts, it is especially well grounded in reason in its application to the plats of western cities and villages which must have a chance of growth commensurate with the public necessity, which will not be lost by mere lapse of time within the above rule."

*Reilly v. City of Racine,* 51 Wis. 526; *Meier v. Cable Rld. Co.* (Ore.) 19 Pac. Rep. 610; *Grogan v. Hayward,* Sawy. 498, 4 Fed. Rep. 161; *Shea v. Ottumwa,* 67 Iowa, 39; *Cheek v. Aurora,* 92 Ind. 107; *Kopf v. Utter,* 101 Pa. St. 27.

The plaintiff below failed to show that he had such a possession of the streets and alleys in question as would bar the right of the public, acquired under dedication. The court below committed no error in refusing to grant the perpetual injunction prayed for, and we therefore recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.