No. 18,031.

J. G. WILSON, *Appellant,* v. L. F. LANE, as Mayor of the City of Neosho Falls, et al., *Appellees.*

SYLLABUS BY THE COURT.

1. INJUNCTION — *Sidewalk—Boundary of City Lot — Conflicting Evidence.* In this action to restrain the city from building a sidewalk on property claimed by the plaintiff the controlling fact to be determined was the true location of a boundary of the property. The evidence was conflicting. There was competent evidence to support the contention of the city that the proposed line of the walk is in a public street, and not upon the plaintiff's property. Although there was evidence tending to prove the contrary, the finding against the plaintiff on conflicting testimony can not be overthrown in this court.

2. PUBLIC STREET—*Private Occupation—Paramount Right of Public.* The rule declared in *Giffen v. City of Olathe,* 44 Kan. 342, 24 Pac. 470, that persons occupying any portion of a street will be presumed to hold it subject to the paramount right of the public is followed.

3. MOTION FOR NEW TRIAL—*Newly Discovered Evidence—New Trial Denied.* An order denying a motion for a new trial, on the ground of newly discovered evidence set out in conflicting affidavits, is affirmed.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed November 14, 1914. Affirmed.

*G. R. Stephenson,* of Yates Center, for the appellant.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an appeal from a judgment refusing an injunction to restrain the construction of a sidewalk along the south side of plaintiff's lot in the defendant city, upon a line designated for that purpose by municipal authority.

The controlling fact to be determined was the location of the true boundary of the plaintiff's lot.

The plat of the town site of Neosho Falls was recorded in 1860. The stakes of the original survey have long since disappeared. Trees were set out by early settlers, supposed to be in the streets outside of the lines of the contemplated sidewalks. Some of the witnesses testified to an understanding that a city ordinance authorized the erection of fences in the streets to protect the trees so planted. It appears that fences have long been maintained for that purpose. An old resident testified:

"The council gave us outside of our line, six feet outside of that for our fence to protect the trees, until almost, we thought that was the line of the street; in fact, some of them thought they did."

A witness who had lived in Neosho Falls since 1857 testified:

"They did n't have any sidewalks there in the early days. When the people set out trees, they generally built a fence far enough out to protect them. When there was ever a sidewalk built they aimed to have the

trees all on the outside of the walk.   When the trees were set out I put fences on the outside of the trees to protect them, and most did.   When they set the trees out it was intended if they ever did build a sidewalk they could put the sidewalk on the inside of the trees."

Another witness who had lived in the city forty years testified:

"I remember the early practice in the city of putting out trees and then building a fence clear outside of the trees; I have known that to be done, to quite a considerable extent; you might say the habit."

There was further testimony to the same effect.

Sidewalks were not built upon residence streets until within the past two or three years.   In laying these walks it was found that some of the trees were not in straight rows, and to avoid their destruction walks have been laid in irregular lines in some places.

The walk in question was ordered to be built along the north side of Eighth street, between Oak street and Main street.   Eighth street extends east and west, and Oak and Main streets extend north and south.   Blocks 27, 28, and 29 are situated between these two streets. The lots front east and west.   Lot 5 in block 27, owned by the plaintiff, extends from Pecan street, which is next east of Oak street, along the north side of Eighth street, east 130 feet to an alley.   There is a row of large· trees along the Eighth street frontage of this lot, and a fence built by a former owner of the lot, outside of the trees, has stood there for twenty years. The plaintiff contends that this fence is on the south boundary of his lot.   The city contends that the lot line is inside the row of trees far enough to allow room in the street for the proposed walk.

To fix the location of the walk in question, the mayor and council caused a survey to be made and the line to be marked by stakes.   The survey was begun at the intersection of Main and Fifth streets, supposed by

the surveyor and generally understood by the citizens to be a section corner.  The surveyor testified:

"Started at the section corner in the center of Main street and Fifth.  Found the section corner there; it was the section corner that folks said had been there all the time. . . . I did not find on the stone where I started at the supposed corner of the sections in Main street a stone with the government markings on it.  I don't know whether it is a government stone or not; we did n't dig it up; we dug down to it and seen it was a line stone; I did n't dig clear to it to examine it.  I based my survey on the theory that that was a government or section corner. . . . I found this stone to be in the center of Fifth street, or nearly so, as compared with the improvements made on both sides of the street."

There was other testimony to the effect that the center of Fifth and Main streets had long been recognized as a section corner.  A witness who had lived in the city since 1868 testified:

"There used to be a stone up there in Main Street; intersection of Main and Fifth Street, commonly referred to as a section corner; I have n't noticed it for some years, but in there, no doubt; used to be right there in the center of the street; as far back as I know anything about the town.  It stood there until just a few years ago, but has n't been there very many years ago.  It was in the center of Main Street and Fifth.  I have not seen it recently.  Not since this controversy came on.  The stone in the center of Main and Fifth Street has been recognized as a regular government stone ever since I've been there, as long as it stood there."

Another witness who had lived in Neosho Falls before the plat of the town site was made and is now a councilman, testified:

"I have a corner down there in the center of Main and Fifth Streets.  I have known of its being there ever since I have known the town; practically so.  I might have noticed it along the first of the years, but ever since I became acquainted with Neosho Falls I have known that there was a corner stone. . . .

I can't say I have ever heard the location of that stone in the center of Main and Fifth Streets questioned until this controversy came up."

From this point so designated as a section corner the survey was made west to a stone in the west line of Oak street, which was found to be in the center of Fifth street by measuring 30 feet north and south respectively to the line of improvements. The surveyor testified that the stone last referred to was recognized by all "as the corner that had always been there." Without following the survey further in detail, it is sufficient to say that, based upon the starting point at the section-line corner and the stone so found in Fifth street at the west line of Oak street, the surveyor located the north line of Eighth street on the west side of Oak street, and from that point east past the plaintiff's lot to the west line of Main street at a point designated as Bishop's corner. Outside of this line and within the line of the plaintiff's fence' referred to, stakes were set for the walk in question.

The line of this walk from Oak street to Main street, including three blocks and crossings of two intervening streets, was thus established inside, that is, north of the row of trees before referred to. Along the plaintiff's property the trees are over fifteen inches in diameter. No notice was given of the survey. Other lot owners were present when it was made, and it does not appear that objections were made to the location of the walk except by the plaintiff. Beginning at Oak street the owner of the first lot built his part of the walk on the designated line. A part of the walk was also built east of the plaintiff's property. The walk is not in an entirely straight line from Main street to Oak street, but is deflected somewhat in places to avoid injury to the trees. To build the walk south of the trees and fence in front of plaintiff's property, as he contends it should, would require an offset of about seven feet from the parts already built by other lot owners.

Wilson v. City of Neosho Falls.

The plaintiff offered in evidence a blue-print map of the city of Neosho Falls for the purpose of showing the location of Fourteenth street, the location of the Santa Fe railroad, originally called the Colony, Neosho Falls and Western railroad, and landmarks with reference to the location of Fourteenth street. Except as this map shows the location of the railroad referred to, and of the Missouri, Kansas & Texas Railway, it is a reproduction of the original plat of Neosho Falls. Measuring from the center of the tracks supposed to be in the center of Fourteenth street north along Main street and Oak street, respectively, the proper distance indicated by the map to find the location of the north line of Oak street it would appear to be about where the plaintiff's fence stands outside of the row of trees. From this evidence and that of witnesses who testified to observations made concerning the line of improvements, fences and walks on other near-by streets, measurements therefrom, and comparisons with distances as indicated on the plat by the size of lots and width of streets and alleys, and other similar testimony, it is insisted that it is conclusively shown that the location of the proposed walk is on the plaintiff's land and not in the street.

At the request of both parties the district judge viewed the premises, the location of the walk, and the surroundings referred to in the evidence. The court found generally for the defendant.

Conceding that the map offered by the plaintiff and measurements based thereon are competent evidence tending to prove his contention, the evidence is not conclusive. There was no extrinsic proof of the accuracy of the survey upon which it was made. The location of the north line of Eighth street was a fact to be determined, not from this evidence alone, but from all the evidence given on the trial, and in the absence of erroneous rulings the findings of the district court upon conflicting testimony can not be overthrown here.

The fact that the plaintiff and those under whom he holds have kept the property in question inclosed and have been in possession for twenty years gives him no right against the city to continue in the occupation of any part of a street within the inclosure. Previous occupation of a portion of the street will be presumed to be subject to the paramount rights of the public. (*Giffen v. City of Olathe*, 44 Kan. 342, 24 Pac. 470.)

A motion for a new trial was made by the plaintiff, based upon newly discovered evidence. The new testimony was stated in an affidavit of the surveyor who surveyed and laid off the route of the walk for the city. In this affidavit the affiant says that after the survey which he had made for the city, he made another survey; that he went to the crossing of Oak and Fifth streets, to the point where a stone had been located, as testified to on the trial, but was unable to find it, the stone having been removed; that he made measurements from the Morey corner, another point referred to also in his testimony on the trial, and other measurements detailed in the affidavit; that because of mistakes and errors in his former measurements he had located the southwest corner of block 27 too far north, by the distance of four feet, and that by his last survey and measurements the sidewalk is located on the plaintiff's land.

The same surveyor made another affidavit, filed by the defendant, in the same motion, in which he said:

"Each measurement was made with the same care and endeavor to be correct as the other. In the last measurement I simply started from such places as Mr. Wilson requested. There was no corner used in this measurement for a starting point. The measurement last made in no wise contradicts the measurement first made. It was simply made from a different starting point. In the first survey I used the Government corner stone in the center of Fifth and Main streets, and another corner stone at the center of Fifth and west side of Oak streets for starting points. When the last measurements were made the corner stone at

the corner of Oak and Fifth Streets, which was used in the first measurement, had been removed by parties not known to this affiant. I have no reason to doubt that had the last measurement been made from the same points as the first that the results would have been substantially the same."

The defendants also presented the affidavits of three persons who testified that on the evening of a day named, two days before the last survey was made, they saw the plaintiff and another person digging and working in the middle of Fifth street on the west side of Oak street where a corner stone was supposed to be located. The plaintiff objected to this affidavit for the reason that it was sworn to before Mr. Lane, one of the defendants, the mayor of the city, but the court received it. Since the surveyor testified that his last survey would have agreed with the first had it been made from the same starting point, it is immaterial to this decision who removed the stone. The new evidence did not, in the opinion of the district judge, afford sufficient grounds for a new trial. No cause appears for holding to the contrary.

The judgment is affirmed.