No. 25,459.

THE CITY OF HUTCHINSON, *Appellee,* v. GEORGE W. WHITE et al., *Appellants.*

SYLLABUS BY THE COURT.

1. INJUNCTION—*To Enjoin Placing Obstructions in Channel of Stream Flowing Through the City.* In straightening the course of a stream through a city the city authorities condemned land through which a new channel for the stream was cut. More than forty years later the owners of lots through which the new channel was cut began the construction of a large building designed to extend over the stream and had placed foundation walls and piers in the channel which necessarily impeded the flow of water in the stream. *Held,* an injunction to prevent the placing of obstructions in the channel of the stream was properly granted.

2. SAME—*Presumption That Appropriation of Land by the City Was a Necessity.* The strip of land having been appropriated to the public use of carrying off water and draining the city, the presumption arises that there was a necessity for the appropriation, and further that the quantity of land condemned was necessary to accomplish the purpose for which it was taken.

3. SAME—*Encroachment on City's Rights Permitted by Earlier Officers—No Estoppel Against Present Officials.* Neither the state nor its agent, the city, can estop themselves from the exercise of police power in protecting the health and welfare of the people of the city, and the fact that earlier officers of the city may not have resisted encroachments upon the appropriated land, does not preclude present officers from taking legal steps to clear the channel and prevent the placing of additional obstructions in the stream.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed February 7, 1925. Affirmed.

*F. L. Martin,* of Hutchinson, for the appellants.

*John H. Connaughton,* and *R. M. Wyman,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the city of Hutchinson to enjoin the defendants from erecting a machine shop over Cow creek, a stream which runs diagonally through the city of Hutchinson. Originally the stream took a zigzag course through the city, and in 1878, in order to straighten it and thus facilitate the flow of water and prevent overflows in times of flood, a right of way 150 feet wide was condemned which extended from the northwest to the southeast through the city. The old bed was abandoned and a new channel for the stream was cut in this right of way. The defendants

owned four lots through which the right of way had been condemned. Over forty years later they began the construction of a building which according to the plan was to extend across the right of way and channel of the stream. The proposed structure was designed to be built of concrete, three stories high, 160 feet long and 40 feet wide. Foundation walls had been constructed and caissons 20 feet apart had been built in the channel of the stream. Retaining walls had been built about 50 feet apart and between these walls there was ordinarily a flow of water 12 feet wide. The city alleged that the structure would interfere with the drainage of the city and cause it to be flooded in times of high water, and if the caissons and foundations are allowed in the bed of the stream and along the banks it will interfere with the proper drainage and cause the creek to overflow its banks, with the result that property will be destroyed and the health of the citizens injured. Testimony was offered as to the condemnation of the ground for the new channel and as to the plans of the building which defendants proposed to build. There was testimony, too, that other buildings had been erected on the right of way, some of which encroached upon the channel and would obstruct the flow as much as the structure proposed to to be built by the defendants. The court found that in pursuance to an ordinance passed in 1878 the city condemned a right of way 150 feet wide across the lots. That while the channel was cut across the lots it had never occupied all of the 150 foot right of way. It is found that taxes had been levied and collected by the city on buildings previously constructed on the right of way. The court sustained a demurrer to the defendants' evidence, holding that it did not prove or tend to prove a defense to plaintiff's cause of action and that defendants had no right to take possession of or erect a building over or across the right of way. The order of injunction was allowed.

There can be no question but that the city obtained such interest in and control of the right of way as can be gained by a condemnation. The purpose of condemning and procuring land for a change of the channel of the stream is undoubtedly a public and a legal one. The validity of the ordinance under which the appropriation was made is not questioned. It is conceded to be a valid appropriation of the ground for the purpose of providing a suitable channel for the flow of water in the creek, and that no one has a right to obstruct the natural flow of the water which passes through

the creek. It is contended that the proprietors of the lots from which the right of way was taken are entitled to use any part of such right of way as is not necessary to the purpose for which the property was condemned. The public authorities appear to have determined that a strip of land 150 feet wide was necessary for carrying off the water and draining the city.

There is little evidence as to the effect of freshets or of flood conditions on the stream or as to the necessity for the use of the entire right of way to carry off the flow of water coming from the watershed. Enough is admitted or shown, however, to warrant the injunction against the placing of foundations and caissons in the channel of the stream. The wall of defendants narrowed the course to 50 feet, and defendants concede that seven piers are designed to be built across the channel each of which is 30 inches in diameter. It was shown that there is ordinarily 30 inches of water in the stream, and the proposed building of defendants over the stream will only be 4 feet and 7 inches from the top of the water to the beams of the building. The extent of the watershed is a well known fact and the volume carried during freshets or heavy rains is necessarily great, and whatever may be the rights of the defendants in parts of the right of way not needed or used for the purposes for which the appropriation was made, defendants had no right to interfere with the use of the channel, no right to place the obstructions mentioned in the channel without the consent of the city. (*K. C. Rly. Co. v. Allen*, 22 Kan. 285.) These obstructions within the flowing limits of the creek necessarily would impede the flow and to an appreciable extent defeat the use and the rights obtained by the city in the condemnation proceeding. The whole right of way 150 feet wide was condemned, and the presumption must be not only that the condemnation was legal but that in this proceeding it was determined that there was a necessity for an appropriation of land and also for the quantity of land taken. (*Dillon v. Railroad Co.*, 67 Kan. 687, 74 Pac. 251.) All recognize that there is need for more land than is required for the channel itself. It is necessary that there shall be room for embankments and a roadway along the stream, so that the city may have access to the channel in order to maintain it and keep it in good condition. Again, the city authorities doubtless considered the future growth of the city, and were making provisions for the greater accumulations and flow of water that will result from an enlargement of

the boundaries of the city. Whether the city acquired the full title and exclusive right to the ground condemned or only such right as is necessary to accomplish the purpose, and whether all of the strip condemned is necessary to effectuate that use, it is not necessary in this case to decide. Evidently it was the view of the district court that the city obtained the exclusive right to the whole, but that question will be reserved until there is a fuller presentation of the facts and law, and also where it is essential to the decision of the case.

There is a further contention that the city should not prevail since other structures had been erected which encroached on the ground appropriated as much as would the proposed building of the defendants. The fact that officers may have been lax in protecting the rights of the city, or have failed to take steps to expel intruders, or that the city itself through its officers have used portions of the condemned ground for other purposes, does not relieve the present officers from performing their duties in this respect nor estop them from asserting the rights of the city. In matters relating to public welfare or any exercise of the police power a state or any of its municipal agencies is not estopped to assert or protect public rights. It is held that a state cannot estop itself even by grant or contract from the exercise of the police power. (*Texas & N. O. R. R. Co. v. Miller*, 221 U. S. 408; *Denver & R. G. R. R. Co. v. Denver*, 250 U. S. 241; *The Sanitary Dist. v. United States*, 45 Sup. Ct. Rep. 176.) Nor is there any basis for a contention that the city has abandoned the property condemned. Those who entered upon the property and occupied a part of it stand in about the same relation as if they had intruded upon and used portions of a public street. It is held that public property cannot be diverted from the use for which it was acquired, and that those who intrude upon and occupy public grounds are presumed to hold it subject to the paramount rights of the public. (*Giffen v. City of Olathe*, 44 Kan. 342, 24 Pac. 470; *Wilson v. City of Neosho Falls*, 93 Kan. 178, 144 Pac. 230.)

Under the facts the city was entitled to the injunction granted, and the judgment is therefore affirmed.