No. 28,748.

THE STATE OF KANSAS, ex rel. WILLIAM J. WERTZ, County Attorney, etc., *Appellee*, v. J. B. BERK, *Appellant*.

(284 Pac. 386.)

Opinion filed February 8, 1930.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris* and *George B. Powers,* all of Wichita, for the appellant.

*William A. Smith,* attorney-general, *John G. Egan, Walter T. Griffin, R. O. Mason,* assistant attorneys-general, *William J. Wertz,* county attorney, and *Jean Madalene,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the state on the relation of the county attorney, charging that J. B. Berk, who

owned land in a bend of the Arkansas river, had planted willows and rushes in the bed of the river, and had placed brush and other debris in the river with a view of filling in and reclaiming from the channel of the river land adjacent to his own, and had already filled up and reclaimed more than fifty acres of land and was threatening to continue the process and the nuisance, and that his acts had already resulted in cutting away the banks on the other side of the river, which encroachment if continued will operate to destroy a public highway and constitute a public nuisance, to the irreparable injury of the state. The plaintiff asked for a perpetual injunction against the defendant from further filling in the bed of the Arkansas river, and that the obstructions which he had placed therein be abated, and that he be enjoined from maintaining the same or from encroaching upon the property of the state. The answer of the defendant was a general denial.

Upon evidence which was somewhat conflicting the court found in favor of the plaintiff and adjudged that the defendant be perpetually enjoined from placing obstructions in the bed of the river or otherwise unlawfully encroaching thereon. In the findings of fact the court, among other matters, in substance found that in July, 1904, defendant acquired lots one, two and three, on the north side of the Arkansas river, comprising altogether 172.56 acres, but that now he claims title to 228.46 acres, an increase of 52.90 acres. At the time of a government survey, made in 1867, the river at different places was about 600 feet wide, and there were then no islands in the river. About 1875 two small islands appeared near the center of the river comprising each from one and one-half to three acres. Trees began to grow upon the islands, some of which attained a diameter of twenty inches. These islands grew larger from year to year by reason of accretions. Some one built a cabin on one of the islands, and later a three-room house. For over thirty years, after 1875, there were three channels in the river, a south channel, a center channel between the two islands, and a north channel to which plaintiff's land adjoined, each of which carried about an equal volume of water. Both of the islands were then surrounded by the main channels of the river. About 1900 the county erected a bridge near the place in question and at that time the south channel had become the main channel, and in low water was about 60 feet wide, the center channel about 40 feet wide and

the north channel about 30 feet wide. The islands had then increased in size to 26 acres, a good part of which had been placed in cultivation and both were entirely surrounded by water. One of them was known as Patterson's island, and the other as Kongel's island. After the bridge was built, a side bridge was erected to allow occupants of the island to come upon the main bridge. At that time the north channel was becoming shallow, and within three or four years water ceased to flow through it except in times of high water. There was a flow of water about three feet deep through the center channel as late as 1910. Defendant obtained a quitclaim deed from one Heltzer. It does not appear what his title or interest in the island was, if any he had, beyond the fact that he was in possession. The defendant then took possession of both islands, which he has since held, and is cultivating the land. Since the time he got the deed the water ceased to flow through the north channel except at high-water stages, and there has been only a slight flow through the center channel. In 1913, when the river was low, defendant began to drag sand and debris into the north and center channels and when the river was high and overflowed the banks, large deposits of sand were made in these channels, and finally they were entirely filled. The filling-up process was accomplished before this action was brought, and by reason of the obstructions and the curvature made all the water was diverted to the south channel and thrown against the south bank in such a way as to cut and injure that bank. In 1915 it became necessary for the county to drive piling in order to protect the bridge. The tracts, called Patterson's island and Kongel's island, were in fact islands since 1875, and until after defendant acquired lots one, two and three. The area of them in 1875 was about 26 acres. The filling of the channel between the islands has added considerable to the area as well as accretions on the north and west sides of the islands. There were accretions to defendant's lots; that to lot one was no part of the island area, and rightly belongs to that lot. There was only a slight accretion to lot three, as practically all the accretions there were to the islands. A large part of the accretions in front of lot two, practically two-thirds of it, rightly belonged to the lot, and the remaining one-third was an accretion to the islands. The last survey of defendant's lots showed that lot one had been increased 1.71 acres, lot two, 28.82 acres, lot three, 21.37 acres. It was

found that without a survey the accretions to the islands could not be definitely ascertained, but testimony tended to show it would amount to about thirty acres. At the present time the location of the old north channel is ascertainable. In 1913, when defendant began filling in the north channel, the water rose in ordinary seasons of high water upon and along the north bank of the north channel of the river, the same being the boundary line of the river with reference to defendant's lots. For about fifteen years the property in question has been upon the tax rolls and defendant has paid taxes upon it and has used the land and cut and disposed of timber from it. The court concludes as a matter of law that the so-called islands were islands in fact, that accretions to them amounted to about thirty acres, that the north boundary line of the river is the south line of lots one, two and three, with their accretions, being the line to which water rises in ordinary seasons of high water, and that the plaintiff is entitled to an order permanently restraining the defendant from placing or maintaining obstructions in the bed of the river, from encroaching thereon, or from placing or causing to be placed unlawfully obstructions therein on or adjoining defendant's lots. A judgment was accordingly rendered.

The findings of fact are well supported by the evidence, and defendant, who produced evidence to the contrary effect, concedes that under the evidence the court was justified in restraining defendant from placing obstructions and making encroachments on the river, and is not now raising any question as to the injunction. He is insisting that the case was tried as an ejectment action without a jury in which the ownership of land was determined. He urges that ownership and right of possession belong to law and not to equity jurisdiction, and the finding and adjudication of ownership of the island by the state was in effect a judgment in ejectment, and he insists that ejectment cannot be obtained under the guise of a proceeding in equity. It may be said that the defendant did not demand a jury or question the jurisdiction of the court to try the issues joined between the parties. The issues were equitable in nature and the judgment appropriate to the relief asked. In the action for equitable relief it was necessary for the state to show that it had an interest in the bed of the river and the property involved in order to establish its right to interfere and protect against the misuse of the same. To do this it showed that the river was a navigable stream and that certain lands therein were islands, and

it followed as a matter of law that the islands were owned by the state, and that it had a right to intervene and prevent private parties from obstructing the river or otherwise impairing the public interest in it. (*Winters v. Myers*, 92 Kan. 414, 140 Pac. 1033; *Steckel v. Vancil*, 92 Kan. 591, 141 Pac. 550; *State, ex rel., v. Turner*, 111 Kan. 302, 207 Pac. 223.) The court in its judgment went no farther than to determine the right of the state to prevent wrongful obstructions and maintenance of a nuisance in the river, as well as interference by private parties with the bed and land in the river, held in trust by the state.

Defendant admits the right of plaintiff to the injunction and he also concedes that injunction could not be granted without a finding of some ownership of the state in the property in question. It appears that the court did not go beyond the conceded limit. The action was not one in the nature of ejectment and the judgment does not direct the ejectment of defendant from the property. The accretions to defendant's land have not been definitely ascertained, and it appears cannot be without a survey. The line between the accreted land which defendant may justly claim, and that belonging to the state, is still open for determination, and when a question of possession arises or an action in ejectment becomes necessary, that line may be determined.

The contention that the state is estopped to claim the bed of the river or the islands in it because officers of the county had placed the land on the tax rolls, and taxes had been paid by the defendant thereon for fifteen years, is without merit. Neither local officers nor yet the legislature can waive the rights of the state in cases of this kind or give away lands of the state to riparian owners. The state holds the property in trust for the benefit of the public and cannot abdicate its function to carry out the trust. (*Winters v. Myers*, supra; *Steckel v. Vancil*, supra.) Nor are rights of the character asserted by the state lost by estoppel, and statutes of limitation are inapplicable to them. (*Douglas County v. City of Lawrence*, 102 Kan. 656, 171 Pac. 610.) See, also, *Construction Co. v. Sedgwick County*, 100 Kan. 394, 164 Pac. 281; *City of Hutchinson v. White*, 117 Kan. 622, 233 Pac. 508; 21 C. J. 1199.

It has been found that the defendant wrongfully obstructed the channels of the river in an attempt to gain a part of the bed of the river and the islands in it by an attempted accretion process, and that he did this when he knew or must be held to have known that

the property belonged to the state and could not be acquired by him in the way attempted. In these circumstances there can be no estoppel. (*Debenture Co. v. Hopkins,* 63 Kan. 678, 66 Pac. 1015.)

We find no error in the record, and the judgment is affirmed.