## CITY OF TULSA v. COMMISSIONERS OF THE LAND OFFICE.

No. 29628. April 9, 1940.

*101 P. 2d 246.*

H. O. Bland, Milton W. Hardy, and

E. M. Gallaher, all of Tulsa, for plaintiff in error.

Tom Huser and William L. Peterson, both of Oklahoma City, for defendant in error.

RILEY, J. This is an appeal from an order sustaining a demurrer to plaintiff's petition and judgment dismissing the action.

The city of Tulsa commenced this action against the Commissioners of the Land Office of the state and the board of county commissioners of Tulsa county seeking a decree declaring plaintiff to be the owner of a strip of land 50 feet wide between Rayburn subdivision (addition) and Home Gardens addition to the city of Tulsa, as an extension of Forty-Fifth West Avenue running from what was originally the north bank of the Arkansas river south to the center of the thread of the stream of said river.

Plaintiff claims title by deed of dedication of Rayburn subdivision (addition) to the public and city of Tulsa.

The instrument of dedication and plat of Rayburn subdivision shows the street in question running south from the northeast corner and along the east side of said subdivision to the south line of the subdivision, which is alleged to be the north meander line or bank of the Arkansas river, a navigable stream as shown by the original survey.

The petition further alleged:

" * * * That said Arkansas river formerly, at a time not definitely known to this plaintiff, flowed in a general easterly direction immediately south, adjacent to and ajoining to said described property, but changed its course and created a new course some one thousand (1,000) feet south thereof, leaving between its new course and the southern boundary of the property owned by the city of Tulsa for the purposes herein set out, and adjacent to said property, valuable and usable lands extending south to the present course of the stream. Wherefore, by reason of the change in the course of the Arkansas river the title of this plaintiff extended south to the

center of, and at right angles to the center of the thread of the stream of the Arkansas river."

It then alleged that the board of county commissioners of Tulsa county, in conjunction with the United States government, are constructing a levee along the present course of the river and across the strip of land and street as thus extended and are claiming some right, title, or interest adverse to plaintiff, and:

"That the Commissioners of the Land Office of the state of Oklahoma, in addition to section 5603, O. S. 1931, section 5585, O. S. 1931, congressional grant, and reservation, of the Arkansas river, claim some right, title, and interest in and to said real property adverse to this plaintiff which constitutes a cloud upon the title of this plaintiff."

By amendment plaintiff alleged:

"* * * That many years ago, the exact date not being known to this plaintiff, the said Arkansas river changed its course by avulsion and not accretion."

The board of county commissioners filed a separate demurrer, which was overruled, and the county commissioners answered by general denial.

The state of Oklahoma on relation of the Commissioners of the Land Office of said state demurred to the petition upon the ground that the petition does not state facts sufficient to constitute a cause of action against it.

This demurrer was sustained, and plaintiff electing to stand on the petition, the court entered judgment dismissing the action, and plaintiff city appeals.

The plaintiff having alleged that the Arkansas river is a navigable stream at the point in question, we will, for the purpose of this case, in considering the petition and demurrer thereto, treat the allegations in this regard as true.

It is also alleged in the amendment to the petition that the change in the course of the river was by "avulsion," and not by "accretion." The allegation as to the date when the change occurred is that it

occurred "many years ago, the exact date not being known to plaintiff."

The strip of land here involved is but a small portion of the so-called "made land," lying south of the platted land in Rayburn's subdivision. In short, it is a strip of land 50 feet wide which the plaintiff claims to the water's edge. The city claims it as a part or extension of the street leading south to the river's edge, and claims title and right to use said strip as an outlet for storm sewer or other drainage purposes.

It was settled long ago that the ownership of the navigable waters and the soil under them in all the territory embraced in the Louisiana Purchase was held in trust by the federal government, and, as each of the states was created, such ownership, within the boundaries of such state, passed to it, and the absolute right to the soil under such waters is in the state subject to the public rights and the paramount power of Congress over navigation, and that such ownership extends to the high water mark. Nolegs v. Edmisten, 40 Okla. 479, 139 P. 943; Dana v. Hurst et al. (Kan.) 122 P. 1041; State v. Berk (Kan.) 284 P. 386; Fowler et al. v. Wood et al. (Kan.) 85 P. 763; Winters v. Myers (Kan.) 140 P. 1033.

It may be noted that in the cases cited, and in many others, the rule is announced that if by accretion and reliction the course of the river changes the boundaries and ownership of riparian land change with it, but an entirely different rule applies where the change in the course of the river is by avulsion.

In such case neither boundary nor ownership of land added to or taken from the banks of the river changes. This is clearly pointed out in Fowler v. Wood, supra, and the many cases cited. Therein it is said:

"If the change in the position of a navigable river dividing the territory of two states be by gradual and imperceptible encroachment or insensible recession, so that the process cannot be detected while it is going on, the boundary follows the shifting thread of the stream.

But if, from storm or flood or other known violent natural cause, there be a sudden, visible irruption of the water, whereby the lands upon one side are degraded or submerged or a new channel is cut for the stream, the boundary remains stationary at its former location, and the boundaries of riparian owners whose lands have been affected remain unchanged. These principles are elementary in the law. The books teem with learning upon the subject, and the collation of authorities would be a work of supererogation."

In some jurisdictions the state owns the bed of navigable streams to the ordinary high water mark. In other states ownership in the state extends only to low water mark. 45 C. J. 540-541. In Oklahoma ownership of the bed of navigable streams in the state extends to high water mark. Nolegs v. Edmisten, supra.

Applying the "high water mark" rule, the petition is defective in that it fails to allege that the land claimed is not now within the bed of the Arkansas river as thus defined.

In George v. Pierce County et al. (Wash.) 191 P. 406, it was held:

"Where prior to the admission of a state into the Union, a navigable stream changed its channel over public lands, and the old channel filled up and was platted and divided into lots and improved, the state did not acquire title when admitted into the Union to such old channel, and the position of the persons thereon cannot be questioned by the state, but only by the government."

But plaintiff's petition does not come within that rule in that it does not charge that at the time of the alleged "avulsion" the land through which the river then flowed was public land. Nor does the petition allege that such avulsion occurred prior to the admission of Oklahoma as a state.

In Brewer-Elliot Oil & Gas Co. v. United States, 67 L. Ed. 140 (cited by plaintiff) it is held that "a state, upon its admission into the Union, takes sovereignty over public lands in the condition in which they are at the time. * * *"

If the area in question was a part of

and within the bed of the Arkansas river at the time the state of Oklahoma was admitted into the Union as a state, and the river was then navigable at that point, the state became the owner thereof at that time and in its then condition. Under the well-established rule heretofore cited, a change in the course of the river thereafter by avulsion would not change the boundary line of the state-owned property.

The order sustaining the demurrer to plaintiff's petition and the judgment dismissing the action are affirmed.

BAYLESS, C. J., and O S B O R N, HURST, and DAVISON, JJ., concur.