**FAULK et al.   v.   ROSECRANS et al.**

No. 35506.

Supreme Court of Oklahoma.

Dec. 8, 1953.

Hardison, Walton & Collins, Lee A. Hardison, Memphis, Tenn., for plaintiff in error, Mary Milner.

Jay D. Jones, Duncan, for plaintiff in error, Myrtle Carter Faulk.

Hays & Powers, LeRoy Powers, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

Prior to September 17, 1935, John A. Carter and his wife, Mary E. Carter, who thereafter died, owned a quarter-section of land in Oklahoma County, Oklahoma. They had five children: Anna E. Dyche, Martha Beal, Myrtle Carter Faulk, Mary Milner, and John Kimber Carter. On the above date, Mr. and Mrs. Carter conveyed the aforementioned property to their son, John Kimber Carter, by an ordinary warranty deed, containing no restrictions, reservations or qualifications. Thereafter, Myrtle Carter Faulk brought Cause No. 114652, in the District Court of Oklahoma County, as plaintiff, aganist her said brother, John Kimber Carter, as defendant, to establish that the aforementioned deed was a conveyance in trust for her and the grantors' other children. The State of Oklahoma, on relation of its Department of Public Welfare, intervened, claiming, in effect, that the conveyance was a ruse to take the record title to the property out of the names of the grantors in order to make them appear eligible for old-age pension benefits; that subsequent to such establishment of said grantors' apparent eligibility for such benefits, a sum in excess of $4,600 in such benefits had unlawfully been paid to said grantors, and praying that such funds so wrongfully received by them be reimbursed or repaid to said Department, or a lien for such sum be established against the property and foreclosed for the

satisfaction of said debt. Said action terminated in a judgment in which the court upheld the claims of the State Welfare Department, finding that Mr. and Mrs. Carter had entered into a scheme with their son, John Kimber Carter, and daughter, Myrtle Carter Faulk, "to make themselves eligible for old-age assistance by transferring" the property as said Department alleged, and further finding that the property "was to be held in trust by * * John Kimber Carter, for himself" and his four sisters, above named. The court further found that by the terms of said trust arrangement, the profits from the property were to be received and used by Mr. and Mrs. Carter during their lifetime and, upon their death, the property was to be distributed in equal· undivided shares among said children. The court further found that in said arrangement, the parties thereto perpetrated a fraud upon the State of Oklahoma enabling Mr. and Mrs. Carter to receive old-age assistance from its Welfare Department, in the sums of $2,322 and $2,280, respectively, between April, 1937 and April, 1947, for which they were ineligible. The judgment established a total sum of $6,233.22, with interest at the rate of 6 percent per annum, as a debt against John A. Carter, rendered judgment against him therefor, and established said debt as a lien against said property. In said judgment the court also ordered the property sold at sheriff's sale to satisfy this lien, and decreed that unless said judgment was paid within 30 days from the date thereof, together with costs, an order of sale should be issued to the Oklahoma County Sheriff, commanding him to advertise and sell the property and apply the proceeds of the sale as follows: (1) in payment of the costs of the sale and the action; (2) in payment of any taxes due on the property; (3) in payment of the judgment to the Welfare Department; and (4) "that the residue, if any, be paid to John Kimber Carter to be held for him in trust, the income therefrom to be paid to John Aaron Carter during his lifetime and, upon the death of said John Aaron Carter, the corpus to be distributed to Anna Dyche, Martha Beal, Mary Milner, Myrtle Faulk and John Kimber Carter, or the survivors in equal shares. * * *"

No appeal was taken from said judgment, and upon issuance of an order of sale in said action, the property was sold at Sheriff's sale for a total price of $7,000, to an individual hereinafter referred to merely as: "R". After Mrs. Faulk, on the one hand, and Mr. Carter and the son and trustee, John Kimber Carter, on the other hand, had filed separate objections to confirmation of said sale, and the latter two parties had tendered and paid the amount of the judgment, with interest and court costs, the court vacated the sale and a satisfaction of the judgment was duly entered.

The funds with which Mr. Carter and his son satisfied the above judgment were derived from their sale of the surface rights and an undivided 3/4ths interest in the minerals lying in and under the land to L. T. and Mary Rosecrans, husband and wife. Thereafter, Carter and his son deeded 1/8th of the mineral rights to their attorneys LeRoy Powers and DeWayne Hays, in consideration for their legal services in connection with the vacation of the previous sale to R., and the release of the property from the Welfare Department's lien, as above described.

Thereafter, the present action was commenced by Mr. and Mrs. Rosecrans, and Messrs. Powers and Hays, as plaintiffs against Myrtle C. Faulk and her sister, Mary Milner, as defendants, to quiet their title to the entire fee in the property, less the undivided one-eighth mineral interest which remained in 'John A. Carter and his son, John Kimber Carter, after their conveyances above described. After a trial by the court, judgment was rendered in favor of said plaintiffs and said defendants have appealed. Where suitable, our continued reference to the parties will be by their trial court designations.

The defendants contend that the trial court erred, when by its judgment, it upheld the conveyances by their father and brother of the surface rights and seven-eighths of the mineral rights as described above, for the reason that said property was a part of

the trust estate in which they had an interest as decreed by the judgment in Cause No. 114652, supra. They say these conveyances were illegal because (1) neither the settlor of the trust, John A. Carter, nor his son, the trustee John Kimber Carter, could convey valid title to the trust property or employ an attorney to assist them as hereinbefore described, without the consent of, or joinder by, the defendants who were cestuis of the trust and owners of remainder or reversionary interests in said property; (2) the conveyance to the Rosecranses could not validly be upheld because the consideration paid therefor was grossly inadequate.

■ With reference to (1), there is much argument in the briefs as to the character of the trust established by the judgment in Cause No. 114652, supra. There appears to be ground for disagreement as to whether, on the one hand, the trust was an active and express one, in both of which events the trustee has the power of sale, or, whether, on the other hand, the trust was a passive, dry, and/or resulting trust. In this connection see Bryant v. Mahan, 130 Okl. 67, 264 P. 811, and compare Kimberly v. Cissna, 161 Okl. 17, 16 P.2d 1090, with Scott v. Nelson, 198 Okl. 392, 179 P.2d 116. Defendants, apparently on the basis of the premise that the trust was created merely to effect a transfer of title from Mr. and Mrs. Carter, with no duties for the trustee and grantee, John Kimber Carter, to perform, say that the trust was a dry or passive one, and present the excerpts from 2 Perry on Trusts, quoted in Burns v. Bastien, 174 Okl. 40, 50 P.2d 377, as authority for their position that said trustee was without authority to diminish the trust estate by conveying a part of it away. We find it unnecessary, for the purpose of passing upon the correctness of the trial court's judgment, to determine how, in relation to the above named types of trusts, the present one should be classified. Also we will assume for the purpose of this decision, that the trust estate found by the judgment in Cause No. 114652, supra, to exist, was the real estate, and not just the proceeds of the sheriff's sale ordered therein, so that the continuance of the trust was not dependent upon whether or not the property sold at the sheriff's sale, and was not terminated when the sale was vacated, but continued to subsist or live thereafter. But as we view the matter, it is immaterial whether such trust was an active one, as distinguished from a dry or passive one, or whether it was an express trust as distinguished from a resulting one. This is because, in view of the situation here presented, the trial court did not err or abuse its discretion in upholding the deeds, upon the basis of which title to plaintiffs' interests was quieted. When Mr. Carter and his son sold these interests, there can be no doubt that an emergency had arisen, which obviously had not been anticipated when the trust was created. It is also quite obvious, or at least reasonable to conclude, that if the money derived from the sale to the Rosecranses had not been raised and paid to satisfy the Welfare Department's judgment in Cause No. 114652, supra, the entire trust estate, with the possible exception of a few dollars left after paying the costs of the lien foreclosure proceedings, would have been lost by confirmation of the sheriff's sale to R. By effecting, or assisting in the making, of this sale to the Rosecranses, the trustee was able to salvage a portion of the trust estate, viz.: An undivided one-eighth interest in the mineral rights. All of the authorities agree that a court of equity may, in cases of emergency, for the preservation of the trust estate and the protection of the cestuis, authorize and direct the trustee to do acts which, under the terms of the trust agreement and under ordinary circumstances, he would have no power to do. 54 Am.Jur., Trusts, Sec. 285. And, a threatened loss of the trust estate is an emergency within this rule. Nail v. American Nat. Bank of Bristow, D.C.N.D. Okl., 21 F.Supp. 385; Burgess v. Nail, 10 Cir., 103 F.2d 37. If a court of equity can authorize a trustee to go beyond the powers of his trust to effect such a preservation of the trust estate, or a part thereof, then why cannot such a court approve such acts retroactively or after

they have been done? Counsel presents no logical answer to this question and we think there is none. In this connection, see 54 Am.Jur., Trusts, Sec. 295, and authorities cited under Note 4 thereof. To hold otherwise and require a trustee in all situations to obtain previous authorization before going beyond his powers in an emergency, would unnecessarily hamper, and in some situations defeat, him, in fulfilling the duties of his trust. We think that in such cases a court of equitable cognizance may regard as having been done, that for which court authority could have previously been given, and give its approval to the acts of the trustee as if such authority or authorization had been obtained in the first instance. See Restatement of the Law, Trusts, Vol. 1, Sec. 167(2) with Comments at p. 421, et seq. Under this view it cannot be said that the trial court's judgment was error or an abuse of discretion in quieting the title of the plaintiffs, Powers and Hays, any more than in quieting the title of Mr. and Mrs. Rosecrans. As said in Nail v. American Nat. Bank of Bristow, supra [21 F.Supp. 391]:

"Trustees are entitled to be allowed their reasonable costs and expenses, including counsel fees, in administering or defending the trust. * * *"

See also 54 Am.Jur., Trusts, Secs. 361, 513 and 636. No showing is herein made that the deed to these plaintiffs of an undivided one-eighth of the mineral rights in the property as their attorney fee in assisting Mr. Carter and his son in preserving to the trust estate the remaining undivided one-eighth interest in the mineral rights, was an unreasonable, excessive or unnecessary expenditure in such endeavor.

Defendants show no way in which any part of the original trust estate in this case could have been saved otherwise than by the sale of a portion thereof which Mr. Carter and his son made, although both of the defendants were parties to Cause No. 114652, supra, in which the Welfare Department's lien was established and ordered foreclosed and, as hereinbefore mentioned, Mrs. Faulk filed objections to the con-

firmation of the sale to R., through which all of the trust estate would have been lost, with the possible exception of a few dollars of the sale proceeds. They never at any time tendered any portion of the Welfare Department's judgment, or offered in any way to assist in satisfying said judgment, which tender or satisfaction may reasonably be concluded to have been a condition precedent to the court's vacation of the sheriff's sale to R. Defendants say that regardless of whether such tender was made by any of the Carter family or not, the court should and would have set aside this sale for other reasons such as inadequacy of the sale price and defects in the sale proceedings. The record does not support this claim and indicates that such an assertion is mere speculation. In addition, the record of the proceedings in the present action discloses that defendants were also given an opportunity to make such a tender previous to the court's entering the judgment herein appealed from, but defendants could, or would, not make such a tender. Under the circumstances, we think the defendants were in no position to complain of the action of their father and brother in making the sale herein attacked; and apparently that is the view adopted by the trial court.

Defendants present no evidence to support their claim that the $7,000 paid by the Rosecranses for their interest in this land was a grossly inadequate consideration. They merely point to the court's vacation of the sale of the *entire fee* in said property to R. for the *same* price, as indicating such alleged inadequacy. However, we note that in the orders and judgment of said court, incorporated in this record, there is no finding as to the adequacy or inadequacy of this amount and it appears likely, from the turn of events hereinbefore described, that this question was never reached.

The judgment of the trial court is hereby affirmed.

JOHNSON, V. C. J., and CORN, DAVISON, ARNOLD and WILLIAMS, JJ., concur.