COMMISSIONERS OF LAND OFFICE — EXPENSES AND FUNDS CONCERNING ARKANSAS RIVER BED Commissioners of the Land Office. (1) The Commissioners of the Land Office have authority to expend funds derived from the sale of sand or gravel, or the bonuses, delay rentals, or royalties received for oil and gas mining leases upon the bed of the Arkansas River where the same is navigable, in payment of the expenses incident to defending actions seeking to establish claims thereto adverse to the title of the State, and to establish the exact boundaries of the area so owned. (2) Those items of expense heretofore paid by the Commissioners of the Land Office in connection with this litigation, and those which will hereafter be incurred in the defense of the State's title to said land and establishing boundary lines thereof, such as attorneys' salaries, travel and subsistence, engineering fees, etc. are properly chargeable to and payable from the funds derived from this source, and the Commissioners of the Land Office are entitled to charge such expenses (heretofore paid out of the operating funds of the Department derived from fees charged, a percentage of the rental collected for agricultural and/or grazing leases, etc.) against this account. The Attorney General has had under consideration your letter wherein you ask: "1. Do the Commissioners have legal authority to expend part of the funds derived from the sale of sand or gravel, or the bonuses, delay rentals, or royalties received for oil and gas mining leases upon the bed of the Arkansas River where the same is navigable, in payment of the expenses incident to defending actions seeking to establish claims thereto adverse to the title of the State, and to establishing the exact boundaries of the area so owned? "2. Are those items of expense heretofore paid by the Commissioners of the Land Office in connection with this litigation, and those which will hereafter be incurred in the defense of the State's title to said land and establishing boundary lines thereof, such as attorneys' salaries, travel and subsistence, engineering fees, etc., properly chargeable to and payable from the funds derived from this source, and are the Commissioners of the Land Office entitled to charge such expenses (heretofore paid out of the operating funds of the Department derived from fees charged, a percentage of the rental collected for agricultural and/or grazing leases, etc.) against this account?" 64 O.S. 281 [64-281] (1961), enacted in 1917, provides in part as follows: "The Commissioners of the Land Office are authorized to lease for Oil and Gas purposes any of the school or other lands owned by the State of Oklahoma, which such Commissioners may deem valuable for Oil and Gas, for the term of five years and as long thereafter as Oil and Gas may be produced therefrom in paying quantities, upon such terms and conditions and in such quantities as the Commissioners shall by Rules and Regulations prescribe." (Emphasis added) In the case of the City of Tulsa v. The Commissioners of the Land Office, 187 Okl. 82, 101 P.2d 246, it is stated: "It was settled long ago that the ownership of the navigable waters and the soil under them in all of the territory embraced in the Louisiana Purchase was held in trust by the Federal Government, and, as each of the states was created, such ownership, within the boundary of such state, passed to it, and the absolute right to soil under such waters is in the state subject to the public rights and the paramount power of Congress over navigation, and that such ownership extends to high water mark." (Emphasis added) It is therefore clear that the river bed of all navigable streams in the State of Oklahoma has been since statehood, land "owned by the State of Oklahoma," and as such may be leased for oil and gas purposes under the provisions of Section 281, supra. Historically, the Commissioners of the Land Office under the authority of said section have leased the bed of the Arkansas River for oil and gas purposes and have sold sand and gravel from the bed of the Arkansas, such river being the only navigable stream within the State of Oklahoma. Funds obtained from such sales of sand and gravel and oil and gas leases, have been, by the Commissioners of the Land Office, placed in the common school permanent trust fund of the state. Such action by the Commission was approved by the Attorney General of Oklahoma in two opinions dated February 15, 1957, and February 18, 1957, to the Honorable Lawrence L. Irwin, then Secretary to the Commission. The Commissioners of the Land Office have collected and now hold in their common school permanent trust fund the sum of approximately Seven Hundred Thousand ($700,000) Dollars of which approximately Sixty Thousand ($60,000) Dollars was derived from the sale of sand and gravel from the bed of the Arkansas River, and approximately Six Hundred Forty Thousand ($640,000) Dollars from bonuses, rentals and royalties arising from the sale of oil and gas mining leases upon the bed of the Arkansas River which our Supreme Court has said is owned by the State of Oklahoma. On December 9, 1966, an action was commenced in United States District Court for the Eastern District of Oklahoma, by the Cherokee Nation or tribe of Indians against the State of Oklahoma, et al., including the Commissioners of the Land Office of the State of Oklahoma, to quiet the alleged title of the plaintiffs to the bed of the Arkansas River in Oklahoma, where the same is a navigable river being that part of the river from the confluence of the Grand to the Arkansas line on the East side of the State of Oklahoma. The Choctaw Nation and Chickasaw Nation intervened in said action as parties plaintiffs. On September 25, 1967, the United States District Court for the Eastern District of Oklahoma rendered judgment on the pleadings in favor of the defendants, the State of Oklahoma, the Commissioners of the Land Office of the State of Oklahoma, and the lessees of the State against the plaintiff and the intervenors. This case was appealed by the plaintiff and intervenors to the United States Court of Appeals, Tenth Circuit. Upon consideration of the cause by the Court of Appeals the judgment of the trial court was affirmed in all respects. Plaintiff and the intervenors then each filed their separate application with the Supreme Court of the United States asking that certiorari be issued to the Court of Appeals, Tenth Circuit. The Supreme Court of the United States has taken jurisdiction and certiorari has been granted. You are correct in your statement when you say that until the present time practically all of the expense of the litigation has been borne by the oil and gas lessees of the State of Oklahoma holding leases upon the bed of the Arkansas River, from funds allocated from the Governor's contingency fund and funds from the office of the Attorney General. In addition to the funds which have been expended in this litigation much expense has been incurred and will be incurred in establishing the boundary lines of the high water mark of the Arkansas River. It has been and will be necessary to employ the services of qualified engineers, surveyors, abstracters and attorneys. There are nine funds in the Land Office. The term "fund" as herein used is a "group of assets reserved and set apart for a specific purpose"; or, "the net worth of a group of assets reserved or set apart for a specific purpose or for the accomplishment of specific objectives." The funds in the Land Office are as follows: 1. Common School 2. State Educational Institution (Section 13) 3. University 4. University Preparatory 5. Agricultural and Mechanical College 6. Normal School 7. Colored Agricultural and Normal University 8. Public Building (Section 33) 9. Greer 33 (Union Graded Consolidated School District) There probably should have been another fund for the deposit of money coming into the Commissioners of the Land Office from state lands other than those trust lands granted the State by the Federal Government such as the income from oil and gas and sand and gravel from the bed of the Arkansas River. No fund was established for these funds, however, and as stated before, around $700,000.00 has been, by the Commissioners of the Land Office, placed in the Common School Permanent Trust Fund. These funds belong to the State of Oklahoma in its propriety capacity and the Commissioners of the Land Office are trustees of the same. Article VI, Section 32 Oklahoma Constitution, provides as follows: "The Governor, Secretary of State, State Auditor, State Superintendent of Public Instruction and the President of the Board of Agriculture, shall constitute the Commissioners of the Land Office, who shall have charge of the sale, rental, disposal, and managing of the school lands and other public lands of the state, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature. " (Emphasis added) The above language was incorporated in the statutory law of Oklahoma by O.S.L. 1933, ch. 91, p. 162, 2, now 64 O.S. 1 [64-1] (1961). Pursuant to the authority granted the Legislature to make rules and regulations for the Commissioners of the Land Office in the management of school and other public lands of the state, the Legislature enacted 64 O.S. 92 [64-92] (1961), which in part provides: "The Commissioners of the Land Office are hereby authorized to sell oil and gas or other mineral leases on any of the public land under their control and supervision whether the same was acquired by Federal Grant, donation, foreclosure or otherwise." and, 64 O.S. 241 [64-241] (1961), which provides: "All the public lands of this state shall be subject to lease in the manner provided herein. The Commissioners of the Land Office shall have charge of the leasing of such land." and, 64 O.S. 281 [64-281] (1961), which in part provides: "The Commissioners of the Land Office are authorized to lease for oil and gas purposes any of the school or other lands owned by the State of Oklahoma, which such Commissioners may deem valuable for oil and gas lease. . . ." (Emphasis added) The Legislature provided for the disposition of bonuses, royalties, and other considerations for leases in 64 O.S. 289 [64-289] (1961), which in part provides: "The proceeds derived in bonuses and royalties and from other inducements and considerations for the execution and operation of the oil and gas leases in this Article provided . . . and the money resulting from such lease and from the operation thereof, shall be handled, disposed of and used in the like manner as the other monies belonging to said several funds under the laws of this state." The Commissioners of the Land Office were granted authority to protect the lands placed in their custody as trustees by the enactment of 64 O.S. 160 [64-160] (1961), which in part provides: "The Commissioners of the Land Office are hereby authorized and empowered to bring or defend suits in the name and on behalf of the State of Oklahoma in all matters affecting the public lands of the state and in all matters affecting the loaning, investing, or collecting of school land and state land monies, of, and belonging to the State." (Emphasis added) In the case of the State ex rel. Commissioners of the Land Office v. Phillips Petroleum Company, Okl. 258 P.2d 1193, (1953), the Court held in the first paragraph of the syllabus as follows: "1. The Commissioners of the Land Office are authorized and empowered by statutes to bring or defend suits in the name of and on behalf of the State of Oklahoma, in all matters affecting their management and disposal of public lands of the state." It therefore appears the Commissioners of the Land Office have constitutional authority to "manage public lands of the state" under rules and regulations set up by the Legislature; that the Legislature has authorized said Commissioners to lease public lands both for agriculture and oil and gas; that the proceeds from such management by the Commissioners "shall be handled, disposed of and used in like manner as the other monies belonging to said several funds under the laws of this State;" that the Commissioners have been authorized to "bring or defend suits . . . affecting the public lands of the state. The authority granted the Commissioners to manage public lands and bring or defend suits affecting such lands implies that the Commissioners may expend whatever funds are necessary for such purpose whether such funds are appropriated funds or funds derived from the trust property or the income therefrom. When the Commissioners of the Land Office sold sand and gravel and oil and gas leases upon the bed of the Arkansas River and accepted and deposited the monies received therefrom, the Commissioners became trustees of such funds, regardless of the particular fund to which deposited. In 54 Am. Jur., Trusts, 356, the general rule is stated as follows: "A trustee in general control and management of a trusts state has in general the power, and it is his duty to make or incur expenditures reasonably requisite to the protection, preservation, and repair of the trust, especially such as are necessary to prevent failure of the trust . . . This embraces the expense of necessary litigation. . . ." In the Restatement of the Law, Trusts 2d, (1959), 177 and 178, it is said: "The trustee is under a duty . . . to take reasonable steps to realize on claims which he holds in trust. "The trustee is under a duty . . . to defend actions which may result in a loss to the trust estate. . . ." In Bogert, Trusts and Trustees, Second Edition (1960), 581, we find this language: "Equity imposes upon the trustee the duty of defending the integrity of the trust. "The trustee who is complying with this duty to defend the trust may advance his own funds for the employment of counsel and the paying of disbursements or he may make such payments from trust property. "The duty of the trustee to resist is not confined to the trial court but extends to the appellate courts." In the case of Faulk v. Rosecrans, Okl., 264 P.2d 300
(1953), the court said: "Trustees are entitled to be allowed their reasonable costs and expenses including counsel fees in administering or defending the trust." In the case of In Re Spencer's Estate, 18 Cal.App.2d 220,63 P.2d 875 (1937), the court said: "It is a general rule that trustees are entitled to reimbursement for expense incurred in good faith in the execution of the trust. "When the trust is attacked in a civil action, the trustee may employ counsel to defend it. . . ." In the case of Mead v. Sherwin, 275 Pa. 146, 118 A. 731 (1922), the court said: ". . . Where a trustee accepts a trust . . . he owes . . . the duty of upholding the trust in the event of an attack made against it. . . justice, accordingly, seems to require that he be allowed out of the trust estate, or its income, a sufficient sum to reimburse him for the outlay." It is therefore the opinion of the Attorney General your first question should be answered in the affirmative. The Commissioners of the Land Office have authority to expend funds derived from the sale of sand or gravel, or the bonuses, delay rentals, or royalties received for oil and gas mining leases upon the bed of the Arkansas River where the same is navigable, in payment of the expenses incident to defending actions seeking to establish claims thereto adverse to the title of the State, and to establish the exact boundaries of the area so owned. It is the further opinion of the Attorney General your second question be also answered in the affirmative. Those items of expense heretofore paid by the Commissioners of the Land Office in connection with this litigation, and those which will hereafter be incurred in the defense of the State's title to said land and establishing boundary lines thereof, such as attorneys' salaries, travel and subsistence, engineering fees, etc. are properly chargeable to and payable from the funds derived from this source, and the Commissioners of the Land Office are entitled to charge such expenses (heretofore paid out of the operating funds of the Department derived from fees charged, a percentage of the rental collected for agricultural and/or grazing leases, etc.) against this account. (W. J. Monroe) ** SEE: OPINION NO. 70-216 (1970) **